IN RE INTEREST OF CHANDRA LOUISE KAIN
AND MELODY RENEE KAIN,
CHILDREN UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V.
BARBARA KAIN, APPELLANT.

307 N.W.2d 119

Filed June 19, 1981. No. 43732.

Michael Kelley of Kelley & Kelley for appellant.

Donald L. Knowles, Douglas County Attorney, and Christopher E. Kelly for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, MᴄCᴏᴡɴ, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

BRODKEY, J.

Barbara Kain, appellant and natural mother herein, appeals to this court from an order entered by the separate juvenile court of Douglas County, Nebraska, termi-

nating her parental rights to Chandra Louise Kain, born April 20, 1974, and also to Melody Renee Kain, born June 29, 1977. We affirm.

The record in this case indicates that on April 10, 1978, the Douglas County attorney filed a petition in the juvenile court which alleged that Chandra and Melody were children within the meaning of Neb. Rev. Stat. § 43-202(1) (Reissue 1978) in that they were both under the age of 18 years, homeless or destitute, and without proper parental support. The petition further alleged that the children were within the meaning of § 43-202(2) (c) in that Barbara Kain, natural mother of said children, either "neglects, is unable to, or refuses to provide proper necessities of subsistence, education, or other care necessary for the health, morals, or well-being of said children . . . ." On that same date, the juvenile court ordered that temporary custody of the children should be placed with Douglas County Social Services. On April 25, 1978, a detention hearing was held, following which the juvenile court ordered that the children be placed in an appropriate foster care facility, and that Barbara be granted reasonable rights of visitation.

On June 14, 1978, an adjudication hearing was held, at which time Barbara admitted to those portions of the petition which alleged that she had left her children without adult supervision for extended periods of time. The hearing was continued until October 2, 1978, at which time, based on the allegations contained in the petition which were admitted to by their natural mother, the court found the children to be within the meaning of § 43-202(1). On that date, the court ordered that Barbara: "a. Continue her counseling at Child Saving Institute; b. Maintain suitable housing; c. be allowed one day a week visitation, as arranged by Douglas County Social Services . . . ."

It next appears that a motion for review was filed by the children's guardian ad litem on January 26, 1979. The motion requested a hearing based upon a report the guardian ad litem had received from Dr. Thomas Jae-

ger, a child psychiatrist who was treating Barbara and her children. The psychiatric report, admitted as exhibit 2, stated:

"I've had occasion to see Chandra in individual play therapy during the past several months and find that she essentially presents as a 4 year old girl who falls in a category of children who are psycho-socially deprived. In addition, she manifests considerable anxiety secondary to the psycho-social deprivation that she has incurred as well as by a withdrawing behavior whenever this level of anxiety becomes too overwhelming for her.

"During the time that I have seen her in individual play therapy, the repeated leitmotif is often the fact that Barbara (her biological mother) has hit her for one reason or another during the times that she stays with her on weekends and holidays. This has come up on more than one occasion and on the last visit after careful inspection by both myself, our receptionist and the driver for Douglas County Social Services, there was a notable bruise on the right lateral side of the thigh which could only have been incurred as a result of her being hit with a metallic object such as the buckle of a belt. There were also some numerous marks over her body as well.

"The fact that this seems to be occurring on a regular basis at least according to what Chandra is telling me, leaves me with a very uneasy feeling. I believe that this child is a probably [sic] candidate for further serious abuse if this type of behavior that her mother's demonstrating is allowed to continue."

A hearing on the motion filed by the guardian ad litem was held on February 12, 1979, at which time the court ordered that Barbara continue counseling sessions with the Child Saving Institute. The court also ordered that overnight visitations by Melody should continue, but that such visitations by Chandra should be discontinued. The next hearing in this matter was held on May 8, 1979, on the oral motion of the guardian ad litem that all visitation in the home of the children's

mother be suspended. The motion was sustained by the juvenile court and all overnight visitations with Barbara were discontinued.

On September 20, 1979, another hearing in this matter was held, at which time the court found that the best interests of the children would be served by placing them in the temporary custody of the Nebraska Department of Public Welfare for foster care. In addition, the court ordered that Barbara: "a. Maintain suitable housing; b. Maintain suitable employment; and c. continue counseling with Thomas Jaeger, M.D. on behalf of her daughter, Chandra Louise Kain."

On January 21, 1980, the Douglas County attorney filed a motion for termination of parental rights, which alleged as follows: "That Chandra Louise Kain and Melody Renee Kain come within the meaning of Nebraska Revised Statutes, 1943, Section 43-209(6), Reissue 1978, because reasonable efforts, under the direction of the Court, have failed to correct the conditions leading to the aforementioned determination, towit: A. That Barbara Kain, natural mother of said children, maintain suitable housing. Barbara Kain failed to obtain and/or maintain suitable housing. On November 22, 1979, the service officer made independent inquiries and located a home for Barbara Kain. The residence has subsequently been in a state of disarray and without an adequate food supply during the visits of said children. B. That Barbara Kain, natural mother of said children, maintain stable employment. Barbara Kain has failed to obtain and/or maintain stable employment. C. That Barbara Kain, natural mother of said children, continue counseling with Dr. Jaeger. Barbara Kain has missed only one counseling session, but the therapist states that Barbara Kain is not capable of long range planning in her own life, and in the absence of major human services intervention is likely to become more ineffectual at her own maintenance, as well as that of said children."

A hearing on the motion was commenced on Febru-

ary 4, 1980, and was continued to a later date. Subsequent hearings were held before the juvenile court on April 21, 1980, May 14, 1980, June 30, 1980, and July 3, 1980. Testimony was presented before the court by witnesses during the aforementioned hearings, and the motion of the Douglas County attorney was thereafter taken under advisement by the court. On August 13, 1980, the court entered an order finding that the allegations of the motion pertaining to Barbara were true, and that Chandra and Melody were children within the meaning of Neb. Rev. Stat. § 43-209(6) (Reissue 1978) in that reasonable efforts had failed to correct the conditions leading to the juvenile court's determination that the children were within § 43-202(1). The court ordered that the parental rights of Barbara be terminated. A subsequent motion for new trial was overruled, and the appellant now appeals to this court.

In her brief on appeal, Barbara assigns as error: (1) The court erred in finding that the termination of her parental rights was in the children's best interests; and (2) The court erred in finding sufficient evidence to support the termination order.

The applicable rules of law are well established. An appeal of a juvenile proceeding to this court is heard de novo upon the record; and the findings of fact by the trial court will be accorded great weight because the trial court heard and observed the parties and witnesses. Also, the trial court's findings will not be set aside on appeal unless they are against the weight of the evidence or there is a clear abuse of discretion. *In re Interest of J.L.L., ante* p. 76, 306 N.W.2d 175 (1981); *In re Interest of McKee*, 208 Neb. 623, 304 N.W.2d 918 (1981); *In re Interest of Morford*, 207 Neb. 627, 300 N.W.2d 795 (1981); *State v. Duran*, 204 Neb. 546, 283 N.W.2d 382 (1979).

Neb. Rev. Stat. § 43-209 (Reissue 1978), the section dealing with the termination of parental rights, reads in pertinent part as follows: "The court may terminate all parental rights between the parents or the mother of a

child born out of wedlock and such child when the court finds such action to be in the best interests of the child and it appears by the evidence that one or more of the following conditions exist: . . . (6) Following upon a determination that the child is one as described in subdivision (1) or (2) of section 43-202, reasonable efforts, under the direction of the court, have failed to correct the conditions leading to the determination."

We have reviewed the record in the present case and have concluded that the evidence contained therein amply supports the decision of the juvenile court to terminate the parental rights of Barbara. Dr. Thomas Jaeger, the child psychiatrist mentioned above, testified that he has had contact with Chandra since October 10, 1978, and with Melody since October 2, 1979. He stated that Chandra was a child who has insufficient stimulation and suffered psychological deprivations from the lack of parental interest expressed from her mother. Dr. Jaeger testified as follows: "When I saw her initially, she presented as a rather bizarre child, almost to the point, that in my differential, I was suspicious she was suffering from a thought disorder. That means, at that time, things were not following sequentially, things were not in order. She had problems with anuresis and copresis, had been soiling in her pants, and bed wetting in the day as well as the night, seemed extremely anxious, physiologically." He also stated that he found similar conditions with Melody.

As to Barbara, Dr. Jaeger stated that in his opinion he did not believe she has the capacity to be an effective parent. He testified: "As far as the sessions went on, I did notice when I would — I suppose I would call a more detached attitude toward the children. By that I mean, that at times, although Mrs. Kain was there in body, at times she seemed indifferent to what was going on with the children and amongst themselves, especially at times when they naturally might either get rambunctious or have a particular need that needed attending to. It seemed to me that at times we would have to remind

Mrs. Kain that perhaps one or the other needed to be taken care of even as far as physical needs." Dr. Jaeger did express encouragement, however, with the progress the children have made while in foster care.

Bonnie Bremer, a caseworker with Child Protective Services of Douglas County, testified that she worked with Barbara in an attempt to help Barbara rehabilitate herself and to meet the court order. She found that Barbara would not care for herself and stated that she made little effort to meet the requirements set by the juvenile court. Bremer stated that Barbara Harris, the court service officer, found the house where Barbara Kain lives, but that the appellant failed to maintain the house. Bremer testified that she had to assist Barbara in going to the store in order that adequate food would be in the home for the children's visitations. She also stated that during such visitations there was little interaction between the mother and children.

Barbara Harris, service officer with the juvenile court, testified that she explained the rehabilitation plan with Barbara Kain numerous times, and made many home visits over a 2-year period. She testified that Barbara exhibited little interaction with the children. This observation was also expressed by Margaret Mullins, a psychologist at Richard Young Hospital, who administered tests to Barbara and watched her behavior with her children.

The trial court found that the termination of the parental rights was justified, basing its decision on the evidence that 2 years had passed since the petition in this case was filed and that Barbara was unable to rehabilitate herself during that time. This court has held that when natural parents cannot rehabilitate themselves within a reasonable time after the adjudication hearing, the best interests of the children require that a final disposition be made without delay. *In re Interest of McKee, supra; State v. Chant,* 202 Neb. 750, 277 N.W.2d 97 (1979). That, unfortunately, is the situation in this case.

We conclude that the action taken by the separate juvenile court was correct and supported by the evidence appearing in the record. The judgment of the juvenile court must be affirmed.

AFFIRMED.