IN RE INTEREST OF CHADD CHIRNSIDE AND ROBIN CHIRNSIDE, CHILDREN UNDER 18 YEARS OF AGE. STATE OF NEBRASKA, APPELLEE, V. MARLENE CHIRNSIDE, APPELLANT.

311 N.W.2d 876

Filed October 23, 1981.    No. 43821.

Dennis R. Keefe, Lancaster County Public Defender, and Don C. Bauermeister for appellant.

Ron Lahners, Lancaster County Attorney, and Richard J. Hautzinger for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

PER CURIAM.

The appellant, Marlene Chirnside (mother), appeals from an order entered by the separate juvenile court of Lancaster County, Nebraska, terminating her parental rights to her two minor children, Chadd Chirnside, born March 18, 1973, and Robin Chirnside, born March 5, 1974. Mother maintains that the State has failed to introduce clear and convincing evidence to establish that the best interests of the children require termination of her parental rights. We have examined the entire record in this case and conclude that the action of the separate juvenile court in terminating mother's parental rights is in fact supported by clear and convincing evidence and is in the best interests of the minor children. The judgment of the separate juvenile court must, therefore, be affirmed.

The parents of the minor children involved in this action were divorced on May 19, 1975. The custody of the children was placed with mother. On April 14, 1976, a petition was filed in the separate juvenile court of Lancaster County, Nebraska, alleging that the children were neglected children as defined by Neb. Rev. Stat. § 43-202(2) (Reissue 1978). The petition alleged that the children were without proper parental care in that their parents failed to provide them with proper care

necessary for their health and well-being, including failure to provide a clean and safe home, failure to provide adequate supervision, and refusal on mother's part to accept services offered by the Lancaster County Department of Public Welfare to correct the conditions of neglect. On April 28, 1976, the separate juvenile court found in fact that mother did not provide a home for her children which was clean and safe, and further found that the children were not given adequate supervision. Specifically, the court found that the environment provided by mother was unsafe and, unless immediately corrected, would be harmful to said children and that the children were without proper parental care as defined by § 43-202(2).

Notwithstanding the court's findings, the court delayed final disposition of the matter and gave mother 3 days to correct the situation. The court ordered that if mother made the home clean and safe within the 3-day period the children were to remain in her custody under caseworker supervision. If she failed to make the home clean and safe, the matter was to be returned to court for further hearing.

At the subsequent hearing the court found that indeed mother had made the home clean and safe and that the children could therefore remain in her custody under the supervision of a caseworker from the Lancaster County Department of Public Welfare. The court further determined that the court should retain jurisdiction of the matter and that the case be reviewed by the court every 6 months or on application of any interested party showing a change in circumstances requiring a different disposition.

The record then discloses a long series of hearings, orders, and conscientious efforts by the separate juvenile court to provide mother with every reasonable opportunity to improve her mental and physical condition so that she could have custody of her children. More than a dozen hearings were held between September 20, 1976, and September 4, 1980, when the

parental rights of the parents were finally terminated.

The record details an almost hopeless situation due to mother's mental condition which apparently is not reversible.

The home was constantly unsafe. On one occasion Chadd was found wandering in the streets unsupervised after 10 p.m. His mother was not at home. Chadd was found dirty, with a bad cold, and not appropriately dressed.

On several occasions mother was committed to either a Lincoln hospital or the Lincoln Regional Center for psychiatric treatment.

Many times during the 4 years, the children were moved between their mother and foster homes. Each time the court exercised great restraint, hoping to permit mother to regain custody of her children. Each effort by the court was met with failure by mother.

At a hearing held on December 4, 1978, mother admitted that the children were without proper care and supervision because mother had been admitted to the Lincoln Regional Center and was being held at the Lincoln Regional Center. By reason thereof the children were once again removed from the family home, Robin being placed with the maternal grandparents and Chadd being placed in foster care.

On May 12 and 13, 1980, a further hearing was held on the petition to terminate the parental rights of the parents. In its order entered on May 30, 1980, the separate juvenile court detailed all of the many hearings and trial placements which had occurred between April 28, 1976, and May 12, 1980. Specifically, the court found that mother has a mental illness which will continue for a prolonged, indefinite period; that she fails and refuses to take medication on a regular basis; and that the mental illness causes her to have psychotic episodes, and while being in a psychotic episode she is a threat to the safety of her children. The record discloses bizarre and irrational behavior by mother, including episodes of exposing herself to others and

making improper sexual advances toward one of Chadd's foster mothers.

The court further noted that while Chadd was living with mother he exhibited signs of anxiety in the school classroom and that this anxiety in the classroom was reduced when he was placed in a stable foster family home. The court further found that to return the children to the custody of mother was a threat to the physical safety of the children and also a threat to the psychological well-being of the children. All of these findings are amply supported in the record.

Dr. Burton Zung, clinical psychologist, testified that mother was unable to meet the emotional needs of her children. His conclusion was that no further services were available to help mother and that her parental rights should be terminated.

Dr. James Anthony, psychiatrist and consultant, diagnosed mother as a manic depressive and stated that she could not effectively parent while in that state.

Dr. Somasundaram Rajendran, another psychiatrist, also diagnosed mother as a manic depressive. He further stated that mother was a psychotic who suffered from delusions and was unable to take care of herself or her children. He also noted that mother had no insight into her problems, which made her possible treatment all the more unlikely.

Marge Ludden, Lancaster County social worker, told of mother's inability to provide a stable environment for her children because of her numerous changes in residence and because of the numerous jobs she had. She concluded that no further social services were left to help mother and recommended that her parental rights be terminated.

And finally, Chadd's foster mother, Linda Rappl, testified that Chadd's behavior was very unruly after being in mother's custody, but that it had improved markedly since living in the Rappl household. She also testified concerning mother's failure to provide Chadd with proper medical care and failure to properly clothe

him and Robin in cold weather. Finally, she testified in detail to the sexual advances made by mother toward her while Chadd was present.

We believe little purpose would be served to set out in further detail all of the evidence. Suffice it to say the evidence clearly and convincingly established that the children were neglected and dependent and the best interests of the children demanded that the parental rights of mother be terminated.

As a result of all the evidence, the trial court terminated the parental rights of mother as of May 30, 1980. The issue regarding the parental rights of the father was continued until July 22, 1980. Thereafter, on June 30, 1980, the father presented a plan concerning the care and custody of the children. By reason of that plan being proposed, the separate juvenile court set aside its previous order terminating the parental rights of mother so as to afford the father an opportunity to implement the plan. On August 28, 1980, a further hearing was held, at which time the court was advised that the father did not desire to proceed with the plan and did not desire to obtain custody of the children. By reason thereof the trial court concluded that the best interests of the children now demanded that the parental rights of both parents be terminated as to the minor children. On September 4, 1980, the separate juvenile court did terminate the parental rights of both parents to the minor children. The father has not appealed from that order and, as to the father, the order is final. It is only with regard to mother that an appeal has been taken and that we need consider at this time.

As we have frequently noted, no case presents for the court a more difficult problem than a case involving the termination of parental rights. No solution is ever adequate to meet the problem. Yet this court is obligated to protect the interests of minor children and must do the best it can under the circumstances. As we noted in *In re Interest* of *Hill,* 207 Neb. 233, 239, 298 N.W.2d 143, 146 (1980): "Everyone wishes to do that which appears

to be best for the minor children, yet one cannot be certain what is really best in each situation. It is for that reason that we have established certain basic rules by which we are to be governed in cases of this nature. These rules are intended to recognize the integrity of the family and to bring about parental termination only when that appears to be required and no other reasonable alternative exists."

Moreover, as we noted in *In re Interest of J.L.L.*, *ante* p. 76, 84-85, 306 N.W.2d 175, 180-81 (1981): "[T]he right of a parent to maintain the custody of his or her children is a natural but not inalienable right and the public has a paramount interest in the protection of the rights of a child."

The instant case is an example of the trial court making every effort to provide mother the opportunity to rehabilitate herself so as to properly care for her children. The record further discloses that mother is simply unable to accomplish that result due to her mental condition. While that is regrettable and may very well be a matter over which mother has no control, the courts cannot ignore their obligation and duty to provide for the best interests of the minor children. Neb. Rev. Stat. § 43-209(5) (Reissue 1978) was specifically designed to address the very problem found in this case. That section of the statute provides in part: "The court may terminate all parental rights between the parents . . . and such child when the court finds such action to be in the best interests of the child and it appears by the evidence . . . (5) The parents are unable to discharge parental responsibilities because of mental illness or mental deficiency, and there are reasonable grounds to believe that such condition will continue for a prolonged indeterminate period."

The evidence is without question that mother's mental illness will continue for a prolonged, indefinite period and while so mentally affected she is unable to discharge her parental responsibilities. Furthermore, there is more than sufficient evidence from which this

court can find by clear and convincing evidence that the best interests of the children in this case demanded termination of parental rights.

While we have frequently held that an appeal of a juvenile proceeding to this court is heard de novo upon the record, we have further held that the findings of fact by the trial court will be accorded great weight because the trial court heard and observed the parties and witnesses. See, *In re Interest of Kain, ante* p. 229, 307 N.W.2d 119 (1981); *In re Interest of J.L.L., supra; In re Interest of McKee,* 208 Neb. 623, 304 N.W.2d 918 (1981). The evidence in this case fully and completely supports the action taken by the separate juvenile court in terminating the parental rights of mother. To do otherwise would be wholly improper. We might wish it to be otherwise. Good intentions either on the part of mother or this court are not sufficient. Only providing for the best interests of the children is sufficient. Hope as we might to discover some other alternative which might permit mother to retain the children, we are unable to do so.

The judgment of the separate juvenile court terminating the parental rights of mother to the two minor children, Chadd Chirnside and Robin Chirnside, is affirmed.

AFFIRMED.