IN RE INTEREST OF ALLEN REED, A CHILD UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. ALLEN REED, JR., APPELLANT.
322 N.W.2d 411

Filed July 16, 1982. No. 81-737.

Richard J. Gilloon of Schicker & Leahy, for appellant.

Donald L. Knowles, Douglas County Attorney, and Christopher E. Kelly, for appellee.

Submitted without oral argument. KRIVOSHA, C.J., BOSLAUGH, MCCOWN, CLINTON, WHITE, HASTINGS, and CAPORALE, JJ.

PER CURIAM.

Allen Reed, Jr., the natural father of Allen Calvin Reed, a minor, has appealed from an order of the separate juvenile court of Douglas County which terminated appellant's parental rights over the minor child. He assigns as error the court's finding that the minor child was neglected within the meaning of Neb. Rev. Stat. §§ 43-202(2) and 43-209(2) (Reissue 1978) insofar as the appellant was concerned and the finding that it was in the best interests of the minor child to terminate such parental rights.

The parental rights of the natural mother of Allen Calvin Reed, born April 22, 1975, were terminated on February 19, 1980, which order was affirmed by this court in the case of *In re Interest of Campbell,* 208 Neb. 374, 303 N.W.2d 513 (1981). A reference to that opinion will reveal the relevant facts which justified that order.

The present action was filed on June 11, 1981, and a hearing was held on August 3, resulting in the entry of a final order terminating the appellant's rights as father of the child on August 5, 1981.

The appellant testified at the hearing that he had been in jail since July 1977, and was currently confined in the Nebraska Penal Complex in Lincoln. He also admitted to being the father of the minor child and that at one time he had been married to the child's mother, Louise Campbell. The record is unclear as to when the appellant and Louise Campbell separated, but the appellant admitted he had stopped seeing his son in 1977. Furthermore, the appellant testified that he never gave his wife money for the support of this child or of the other children then living in the appellant's household, and the record makes it apparent that some support was fur-

nished through Aid to Dependent Children. However, the appellant did claim to have made grocery money available for the children during the period he had been employed in Sioux City and that he had bought the children toys and "whatever I think that they needed."

According to the record, appellant is currently serving a sentence of not less than 12 nor more than 15 years for shooting with the intent to wound, kill, or maim, and, as admitted by him, there were approximately 80 entries on his computer list of contacts with law enforcement agencies. However, he stated that most of these were for traffic tickets, although he did admit to being incarcerated in the penitentiary on two occasions as an adult, and once as a juvenile, and to having spent quite a bit of time in jail as a result of some of the other offenses. When asked if he had not had his share of troubles with the law, his answer was, "Not really, not no more than anybody else."

The appellant insisted that he had made several unsuccessful attempts to locate his minor child. With respect to the lack of support, the appellant testified, on the one hand, that if he had had any money for this child's support he did not know where to send it. However, upon questioning by the court, he admitted that he had contacted the welfare office and knew that he could send money for the support of his child, yet he had failed to do so. At the time of the hearing in August of 1981, the appellant had not seen nor had any contact with his child for 4 years. The appellant stated that he had married someone whom he met while in the penitentiary in June 1981, and that between himself and his current wife the child could be taken care of. There is no indication in the record that the appellant's present wife has ever seen the minor child.

"An appeal of a juvenile proceeding to this court is heard de novo upon the record; and the findings of

fact by the trial court will be accorded great weight because the trial court heard and observed the parties and witnesses." *In re Interest of Kain,* 209 Neb. 229, 233, 307 N.W.2d 119, 122 (1981). In cases of child neglect, we have repeatedly held that the best interests of the child are paramount and that parental rights may be forfeited by substantial, continuous, and repeated neglect of a child and a failure to discharge the duties of parental care and protection. *In re Interest of Witherspoon,* 208 Neb. 755, 305 N.W.2d 644 (1981).

The appellant in effect argues that although it may have been proper to have terminated the parental rights as to the mother of the child, it has never been shown that he was unfit, or neglected the child. The answer to that contention, of course, is that for the first 2 years of the child's life, he was aware of the improper treatment that was being given the child by the mother. We have stated before that both parents are obligated to perform the parental duties and the father cannot delegate those duties to the mother of the child and expect to be held harmless if she neglects the child. *In re Interest of Kimsey,* 208 Neb. 193, 302 N.W.2d 707 (1981).

It is also argued by the appellant that his parental rights may not be terminated solely because of his incarceration for the commission of a crime. However, we have said that the fact of incarceration may be considered along with other factors in determining whether parental rights should be terminated. *In re Interest of Wagner and Russell,* 209 Neb. 33, 305 N.W.2d 900 (1981). Furthermore, we cannot disregard the appellant's conduct which resulted in his incarceration, nor the thoroughly indifferent attitude with which he regarded his "normal lifestyle" which had resulted in 80 contacts with law enforcement officials. Certainly a parent's moral conduct is a valid consideration in a determination

of parental fitness. *Matter of M. B.*, 288 N.W.2d 773 (S.D. 1980).

After 7 years of waiting, this child has a right to grow up in a healthy and wholesome environment, and each day's delay in providing such environment causes such right to become increasingly unobtainable. *In re Interest of Carlson*, 207 Neb. 540, 299 N.W.2d 760 (1980). To delay further a final decision on this issue would be unthinkable. We will not gamble with this child's future by making him await an uncertain and improbable parental rehabilitation. *State v. Souza-Spittler*, 204 Neb. 503, 283 N.W.2d 48 (1979). There is nothing in the record to support a reasonable conclusion that even considering the fact of appellant's remarriage we could expect any change in circumstances beneficial to this child.

From a de novo review of the record, we are convinced that the action of the juvenile court in terminating parental rights is supported by clear and convincing evidence. Its judgment is affirmed.

AFFIRMED.