348 N.W.2d 861 (1984)
217 Neb. 325
In re Interest of M.W., B.W., R.L.W., and B.J.W., children under 18 years of age.
STATE of Nebraska, Appellee,
v.
L.W., Appellant.
No. 83-345.
Supreme Court of Nebraska.
May 11, 1984.
*862 John R. Brownell of Lauritsen, Baker & Brownell, Grand Island, for appellant.
Cunningham, Blackburn, VonSeggern, Livingston, Francis & Riley, and Gary Schacht, Deputy Hall County Atty., Grand Island, for appellee.
KRIVOSHA, C.J., and BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.
PER CURIAM.
The natural mother of the children under the age of 18 years, M.W., B.L.W., R.L.W., and B.J.W., appeals the Hall County District Court's judgment affirming a county court order terminating the mother's parental rights. We affirm.
*863 Although the mother assigns five errors, the errors are summarized as follows: (1) There is insufficient evidence to terminate parental rights, and (2) The court should have required less restrictive alternatives before terminating parental rights.
On February 26, 1981, a petition was filed in the county court and alleged the children were abandoned by their parents and lacked parental care by reason of the fault or habits of their parents; were children whose parents neglected or refused to provide proper or necessary subsistence, education, or other care necessary for the health, morals, or well-being of the children; and were children whose parents neglected or refused to provide special care made necessary by the mental condition of the children. See Neb.Rev.Stat. § 43-202(2)(a), (b), (c), and (d) (Reissue 1978). On March 4, 1981, after a hearing on temporary custody, the county court placed legal and physical custody of the children with the Hall County Department of Public Welfare, subject to visitation by their parents.
On May 1, 1981, the parents of the children admitted the allegation that the children lacked proper parental care by reason of the faults and habits of the parents. The county court then adjudged that the children came within the purview of § 43-202(2)(a) and (b). After such adjudication by the county court, the parents entered into an agreement with the county welfare department, which required that the parents (1) obtain and maintain employment at least 35 hours per week, (2) obtain suitable housing, (3) refrain from using illegal drugs and intoxicating beverages, (4) continue with counseling at the mental health center, (5) continue involvement with the parenting group at the mental health center or with the nutrition aid group, (6) have visitation with the children from 5:30 p.m. on Fridays to 5:30 p.m. on Sundays, and (7) develop a written plan for babysitting services once the children are returned to their home. In the meantime, the county welfare department placed the children with foster parents.
As a result of a hearing on August 25, 1981, the county court found that the parents of the children had not substantially complied with their agreement with the county welfare department until approximately 3 weeks before the hearing. In its order of August 25, the county court specifically incorporated the provisions of the agreement between the parents and the county welfare department.
On November 3, 1981, a motion was filed for termination of parental rights. At the May 6, 1982, hearing on the motion, the evidence showed the children's parents had not complied with the provisions of the agreement with the welfare department and the court's order incorporating that agreement between the parents and the welfare department. In particular, the evidence showed that the employment of the parents was sporadic, that alcohol abuse was still a problem with the children's father, who had been incarcerated for a parole violation, that the parents had to change residences at least three times due to evictions for nonpayment of rent, and that the parents failed to keep their appointments for counseling. Upon the evidence at the May 6 hearing, the county court indefinitely continued the termination hearing, revoked the parents' contract with the welfare department, and entered a supplemental order requiring the parents to obtain employment and to maintain regular counseling for parenting skills.
At a hearing on July 16 provisions were made for return of the children to the parental home, provided the parents continued and completed parenting classes, complied with the special educational needs of each child, continued medical treatment for the children, and provided adequate housing.
The parents left their home when they could not pay rent on their residence. On October 14, 1982, there was a hearing on the supplemental motion to terminate parental rights. Evidence showed that all four children have special needs not met while the children were in parental custody. A pediatrician testified the children were *864 dirty when brought to his office, and the physician expressed concern that the children had not received prescriptions ordered by the doctor. When the pediatrician tried to treat the children with injectable medication, the parents did not come to the doctor's office for appropriate followup treatment of the children. Another physician testified that the children's hygiene was substandard and that some of the children were unclean to the point of neglect.
A staff nurse for the home health care program periodically visited the parental home and observed the children's illnesses due to failure to administer medication obtained for the children. The nurse took the children to a physician because the parents had neglected to do so. On one occasion the nurse took one of the children to a physician because the mother failed to recognize a serious case of pneumonia in the child. Failure to treat a recurring ear infection in one of the children was a potential cause of loss of hearing. However, the home health care program ceased when the nurse could not locate the parents, who had moved without notifying the nurses about a new location for the parents and the children.
A social services worker testified that parenting classes, usually completed within 8 to 10 weeks, were never completed by the father of the children during the 20 months that the proceedings had been under submission in the county court. The mother completed the program some 18 months after the petition had been filed in 1981.
The children's mother admitted at the hearing that the parental home was not a good environment for the children and that she could not take care of the four children under the circumstances, especially in view of the father's alcohol problem and presence in the home.
As a result of the hearing on October 14, 1982, the county court terminated parental rights and placed legal and physical custody with the Nebraska Department of Public Welfare for permanent placement for adoption. The parents appealed to the district court. The district court, upon the evidence, found that the conditions described in § 43-292(2), (3), and (4) (Cum.Supp. 1982) existed, namely, that "the neglect of the minor children and failure to discharge the duties of parental care and protection have been substantial, continuous and repeated." The district court also found that termination of parental rights was in the best interests of the children and that the order of the county court terminating parental rights was supported by clear and convincing evidence, and affirmed the county court's judgment.
Termination of parental rights must be based on clear and convincing evidence. In re Interest of Hill, 207 Neb. 233, 298 N.W.2d 143 (1980). In an appeal of a juvenile case, including termination of parental rights, we review the record de novo, and regarding disputed facts make our own findings independent of any conclusion reached by the trial court. If evidence is in conflict or dispute, we do consider and give great weight to the fact that the trial court has observed the parties and witnesses and has judged their credibility. Cf., State v. Kinkner, 191 Neb. 367, 216 N.W.2d 165 (1974); State v. Rice, 204 Neb. 732, 285 N.W.2d 223 (1979); In re Interest of Brungardt, 211 Neb. 519, 319 N.W.2d 109 (1982); In re Interest of Roman, 212 Neb. 919, 327 N.W.2d 36 (1982). Although the mother contends that there is no clear and convincing evidence to support termination of parental rights, there is clear and convincing evidence for terminating parental rights. In this case the evidence clearly and convincingly establishes that the mother has been unable to care for the children and that the mother has failed to take advantage of the resources and facilities offered to improve living conditions for the children. Such inability to care for the children and indifference to the well-being of the children has persisted over many months and indicates an impermissible inability to take care of the children.
Concerning the mother's contention that the court should have required less restrictive alternatives before terminating parental rights, it is not the law in *865 Nebraska that parental rights may not be terminated unless a parent is given a reasonable opportunity for rehabilitation. The court may, within its discretion, order a parent to make reasonable efforts to rehabilitate, and a parent's failure in such rehabilitative efforts is another independent reason justifying termination of parental rights. See, In re Interest of Brungardt, supra, citing In re Interest of Wood and Linden, 209 Neb. 18, 306 N.W.2d 151 (1981); § 43-292(6) (Cum.Supp.1982). Although the right of parents to maintain custody of their children is a natural right protected by the Constitution, such parental right is subject to the paramount interest which the public has in the protection of the rights of a child. See In re Interest of M., 215 Neb. 383, 338 N.W.2d 764 (1983). Alternatives less restrictive than termination of parental rights were attempted over a period of approximately 20 months. The mother has failed to rehabilitate herself, notwithstanding the county court's order and programs directed to rehabilitation. When parents cannot rehabilitate themselves within a reasonable time, the best interests of a child require that a final disposition be made without delay. See, In re Interest of M., supra; In re Interest of R.D.J. and K.S.J., 215 Neb. 724, 340 N.W.2d 415 (1983). "`[W]e will not gamble with the child's future; she cannot be made to await uncertain parental maturity.'" State v. Souza-Spittler, 204 Neb. 503, 511, 283 N.W.2d 48, 52 (1979). Upon the record before us we conclude there is clear and convincing evidence that the best interests of the minor children require termination of the mother's parental rights.
AFFIRMED.
KRIVOSHA, Chief Justice, dissenting.
I must respectfully dissent from the majority opinion. In my view the evidence in this case is neither clear nor convincing that the parental rights of the mother should be terminated. Quite to the contrary, I believe the evidence discloses that if any movement, in fact, is occurring, it is in the direction of improvement on the part of the mother. While it is true that we need not wait forever to "`await uncertain parental maturity,'" see State v. Souza-Spittler, 204 Neb. 503, 511, 283 N.W.2d 48, 52 (1979), neither should we encourage the parent to improve her condition and, just at the moment that evidence of improvement appears, decide we have waited too long.
There is no evidence of physical abuse, though there is some evidence that by reason of the low mental condition of the mother, the children have experienced some medical problems. This, however, is balanced against the facts that for 5 months prior to the hearing the mother remained gainfully employed, that she finally completed the parenting classes that had been required of her, and that for 8 months prior to the hearing she had abstained from the use of alcoholic beverages. Neither unemployment nor one's inability to pay rent, thereby necessitating frequent moves, absent actual harm to a child, should be grounds for termination of parental rights.
What we really have in this case is a poor, uneducated parent who has, by reason of her place in society, had poor, uneducated children. But a court cannot deprive a parent of the custody of a child merely because the parent has limited resources or financial problems, or is not socially acceptable, or because the parent's lifestyle is not typically middle class. It seems almost self-evident that any child of poor, uneducated parents who is placed with wealthy, educated parents will be "better off." However, in determining the "best interests" of the child, we cannot close our eyes to the realities of life and assume that we should terminate parental rights to children because of the parents' financial station in life or inability to conduct themselves in accordance with middle class standards. Poor, illiterate people still have a right to have children.