IN RE INTEREST OF M.S., A CHILD UNDER 18 YEARS OF AGE. STATE OF NEBRASKA, APPELLEE, V. P.S.W., APPELLANT.

360 N.W.2d 478

Filed December 28, 1984.    No. 84-218.

Randal B. Brown, for appellant.

Randall L. Rehmeier, Otoe County Attorney, and Alan M. Wood, guardian ad litem, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

CAPORALE, J.

On June 29, 1983, the county court, sitting as a juvenile court, terminated the parental rights of the appellant mother with respect to M.S., a son born to her out of wedlock on April 17, 1981. The district court affirmed. On appeal to this court the mother assigns five errors, which combine to present two complaints: (1) That the evidence is not sufficient to support the termination of her parental rights; and (2) That she was unconstitutionally required to give testimony against her own interest. The record does not support either complaint. We therefore affirm.

The events leading to this appeal began on December 26, 1981, when police were called to a Nebraska City bar where they found the mother in a highly intoxicated state, with her infant son in tow. The infant was found to have vomited on himself and to be inadequately clothed in view of the below-freezing temperatures. In addition, the milk which the mother had been trying to feed him was sour. The police immediately placed the infant in temporary foster care, where it was observed that

there was an odor of alcohol on his breath; he appeared dazed, and although he would whimper occasionally, appeared lifeless and demonstrated little physical movement. During that first night in temporary foster care, he alternately screamed and resumed a lifeless appearance. He also broke out in cold sweats, refused to accept food, and vomited when force-fed. The following day he continued to break out in cold sweats, and it was then noted that the sweat smelled of alcohol.

On December 29, 1981, the State filed a petition seeking to terminate the mother's parental rights under the provisions of then Neb. Rev. Stat. § 43-202(2)(b) and (c) (Reissue 1978). The State alleged, among other things, that the child lacked proper parental care by reason of the mother's fault or habits; that she neglected and refused to provide necessary parental care and protection; and that she was unfit by reason of the habitual use of intoxicating liquor.

At the time the State filed its petition, § 43-202(2)(b) and (c) granted juvenile courts jurisdiction over a child lacking proper parental care by reason of the parents' fault or whose parents neglected or refused to provide the subsistence, education, or other care necessary for the child's health, morals, or well-being. Section 43-202 was repealed effective July 1, 1982; however, the aforedesignated provisions of that section are included in present Neb. Rev. Stat. § 43-247(3) (Cum. Supp. 1982). Neb. Rev. Stat. § 43-292 (Reissue 1984), which became effective July 1, 1982, authorizes termination of parental rights when it is in the best interests of a child who, among other circumstances, falls under the provisions of § 43-247(3). Prior to July 1, 1982, former Neb. Rev. Stat. § 43-209 (Reissue 1978) authorized termination of parental rights when it was in the best interests of a child, and the parent, among other things, substantially and continuously or repeatedly neglected the child and refused to give the child necessary parental care and protection, or was unfit by reason of the habitual use of intoxicating liquor. Since the substance of the statutory provisions relevant to the State's allegations in this case has remained the same throughout these proceedings, we need not be concerned with the effect, if any, of the repeals of and changes in various portions of the statutes relating to juveniles

and juvenile courts, notwithstanding the State's failure to amend its petition.

In addressing the mother's first complaint, which questions the sufficiency of the evidence to support the termination of her parental rights, we review the matter de novo on the record, giving great weight, where the evidence is in conflict, to the fact that the trial court has observed the parties and witnesses and judged their credibility. We also keep in mind that an order terminating parental rights must be supported by clear and convincing evidence. *In re Interest of D.R. and S.B.*, 217 Neb. 883, 351 N.W.2d 424 (1984); *In re Interest of W.*, 217 Neb. 325, 348 N.W.2d 861 (1984).

Upon the filing of the State's petition the county court placed temporary care and custody of the infant in the Department of Public Welfare, now the Department of Social Services, which, in turn, placed his possession in a foster home. At this time the infant had poor motor coordination, did not hear well due to an ear infection, and had swollen genitals.

The evidence adduced at the adjudication hearing held on February 12, 1982, established that the mother was addicted to and dependent upon alcohol and that the prognosis for her recovery was poor. She had been arrested on October 31, 1981, for third offense drunk driving, and had frequently been intoxicated, on many of which occasions she had her inadequately clothed infant son with her. Upon this evidence the county court continued its prior custody order, directed that a social evaluation be prepared, and scheduled what proved to be the first of several dispositional hearings.

The first dispositional hearing was had on April 16, 1982, at which time the county court again continued its earlier order as to the infant's temporary custody, set a further hearing to determine whether parental rights should be terminated, and ordered the mother to follow a plan of rehabilitation. The plan required that the mother marry the man with whom she was then living; that both she and her husband then undergo alcohol counseling and treatment and attend parenting skills classes at Blue Valley Mental Health Center; that she refrain from criminal conduct; and that she exhibit the ability to financially and emotionally take care of the child.

At the second dispositional hearing held on July 28, 1982, it developed that the mother had, on May 7, 1982, been committed to the Nebraska Center for Women in York as the result of a conviction on the October 1981 drunk driving arrest. The mother testified that she had gone to the Blue Valley center two or three times following the April hearing for alcohol counseling, but had to quit upon her incarceration. She also testified that she had just begun to attend Alcoholics Anonymous meetings and parenting classes at the women's center.

The final dispositional hearing began on June 1, 1983, and concluded on its second day on June 15, 1983. It established that the mother had been living in a pickup camper until about the first day of this last hearing and had not obtained employment to that time. She had had a number of altercations with her husband of such a nature as to require police intervention. She had made but three contacts with the Blue Valley center regarding alcohol counseling following her release from the women's center on January 6, 1983, and had attended but one parenting class. She contacted the Blue Valley center again after the first day of this dispositional hearing, saying she had to have alcohol counseling and parenting training so that "it would look good to the court," but attended no alcohol abuse classes. Because of their limited contact with the mother, the counselors at the Blue Valley center were unable to give any opinion as to her eventual rehabilitation. The mother's Alcoholics Anonymous sponsor did testify that she had been attending Alcoholics Anonymous meetings for about a month and a half and believed that she had a sincere desire to deal with her alcoholism. He admitted, however, that her progress was slow. The mother testified she had visited her son but five times after her release from the women's center.

It is clear that the mother failed to substantially comply with the rehabilitation plan ordered by the county court. Although she did comply with the requirement that she marry the man with whom she was living, that event did nothing to make her a fit and capable parent. Having complied with that requirement, she cannot now complain of it. Neither are we required to comment as to the legal validity or invalidity of that

requirement. The feeble efforts the mother made to overcome her alcoholism and to acquire parenting skills were a classic case of "too little, too late" and were completely ineffective.

We have said that a court may, within its discretion, order a parent to make reasonable efforts to rehabilitate, and a parent's failure to do so is an independent reason justifying termination of parental rights. *In re Interest of W.*, 217 Neb. 325, 348 N.W.2d 861 (1984).

More importantly, when the best interests of a child so require because of the unfitness of a parent, the natural right of the parent to the care and custody of his or her own child must give way to the paramount interest of the State in protecting the rights of the child. *In re Interest of Levey*, 211 Neb. 66, 317 N.W.2d 760 (1982).

The evidence is clear and convincing that the mother has not become a fit parent and that the best interests of the infant require that her parental rights be terminated. The infant cannot be allowed to revert to the state in which he was found on December 26, 1981. Neither can the infant be made to " 'await uncertain parental maturity.' " *State v. Souza-Spittler*, 204 Neb. 503, 511, 283 N.W.2d 48, 52 (1979), quoting *Long v. Long*, 255 N.W.2d 140 (Iowa 1977). Stated another way, when a parent cannot rehabilitate herself within a reasonable time, the best interests of the child require that a final decision be made without delay. *In re Interest of W., supra.*

In her second complaint the mother argues that the State forced her to testify against her own best interest at the final dispositional hearing and, consequently, violated her federal constitutional right against self-incrimination. The claim rests on the fact that on the second day of that hearing, after the county judge overruled her objections, she testified about her failure to take full advantage of the counseling offered at the women's center, her unemployment, and her inadequate living accommodations.

The mother relies on *Santosky v. Kramer*, 455 U.S. 745, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982), and *Lassiter v. Department of Social Services*, 452 U.S. 18, 101 S. Ct. 2153, 68 L. Ed. 2d 640 (1981), to support her contention. *Santosky* holds that the due process clause of the fourteenth amendment to the

U.S. Constitution requires that a state support its allegations in a parental termination proceeding by "clear and convincing evidence," a holding which we foreshadowed. *State v. Souza-Spittler, supra. Lassiter* holds that due process does not require that an indigent parent be appointed counsel in parental termination proceedings. Thus, both *Lassiter* and *Santosky* ground a parent's fundamental liberty interest in the care and custody of his or her child on the due process clause of the fourteenth amendment to the U.S. Constitution.

The right to remain silent is grounded upon the language of the fifth amendment to the U.S. Constitution, which in pertinent part reads: "No person shall be . . . compelled in any *criminal case* to be witness against himself . . . ." (Emphasis supplied.)

Although *In re Interest of Spradlin*, 214 Neb. 834, 336 N.W.2d 563 (1983), presented the issue in the context of a claimed requirement for the presence of counsel at interviews between the parents and expert witnesses, we said that a proceeding to terminate parental rights is statutorily mandated and brought about to protect a child; it is not criminal in nature. We now conclude that, absent questions which would subject the parent to criminal sanctions, a proceeding to terminate parental rights does not trigger the protection afforded by the fifth amendment against self-incrimination. No incriminating questions were asked of the mother in this case.

Nonetheless, the mother asks us to somehow blend a parent's fundamental fourteenth amendment due process right to the care and custody of his or her child with a criminal defendant's fifth amendment right to remain silent, so as to produce a hybrid right for a parent to remain silent in a parental termination proceeding. The request is without merit, and we consequently decline it.

The mother's complaints being unfounded, we affirm the judgment of the district court affirming the judgment of the county court.

AFFIRMED.