In re Interest of M.L.B., a child under 18 years of age.
State of Nebraska, appellee, v. J.B.W., appellant.

377 N.W.2d 521

Filed December 6, 1985.    No. 85-148.

Roberta S. Stick, for appellant.

Vincent Valentino, York County Attorney, and Charles W. Campbell, for appellee.

George E. Brugh, guardian ad litem.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

WHITE, J.

J.B.W., the natural mother of M.L.B., born August 30, 1975, has appealed from the January 21, 1985, order of the district court for York County which affirmed the March 7, 1984, order of the York County Court terminating her parental rights to M.L.B. pursuant to Neb. Rev. Stat. § 43-292(2) and (6) (Reissue 1984). M.L.B. is the appellant's only child.

An order terminating parental rights is reviewed de novo on the record in this court, giving great weight, where the evidence is in conflict, to the fact that the trial court observed the parties and witnesses and judged their credibility. *In re Interest of M.S.*, 218 Neb. 889, 360 N.W.2d 478 (1984). An order terminating parental rights must be based on clear and convincing evidence. *In re Interest of Fant*, 214 Neb. 692, 335 N.W.2d 314 (1983).

The primary consideration in any case involving termination of parental rights is the best interests of the child. *In re Interest of D.*, 218 Neb. 23, 352 N.W.2d 566 (1984). Our cases hold, generally, that it is in a child's best interests that a final disposition be made without delay. *In re Interest of McKee*, 208 Neb. 623, 304 N.W.2d 918 (1981). " '[W]e will not gamble with the child's future; she cannot be made to await uncertain parental maturity.' " *State v. Souza-Spittler*, 204 Neb. 503, 511, 283 N.W.2d 48, 52 (1979). The right of a parent to custody and control of his or her children is not an inalienable right. The public has a paramount interest in the protection of the children from neglect. *In re Interest of Wanek*, 212 Neb. 394, 322 N.W.2d 803 (1982).

Keeping in mind these interests, we now proceed to the circumstances of this case. Appellant makes eight assignments of error which can be summarized as follows: (1) There is insufficient evidence to terminate parental rights; (2) The court erred in admitting into evidence statements made to the caseworker by an anonymous caller; and (3) The court erred in finding that the supplemental petition alleged facts sufficient to state a cause of action.

The facts and proceedings of this case span nearly 10 years. J.B.W. is currently 32 years old, and the record indicates that she has spent most of her life since age 20 in prison. At the time of her daughter's birth, J.B.W. was incarcerated at the Nebraska Center for Women for the second time as a result of being sentenced to a term of 3 years for possession of a forged instrument. The daughter, M.L.B., was born in August of 1975. Shortly after M.L.B.'s birth, a petition was presented to the York County Court stating that M.L.B. appeared to be a child described in Neb. Rev. Stat. § 43-202(2) (Supp. 1975) because her mother was incarcerated, and therefore within the jurisdiction of the juvenile court. On September 5, 1975, the court issued an order finding that M.L.B. should be placed in the custody of the Lancaster County Welfare Department for the best interests of the child. The court found M.L.B. to be a juvenile child as defined by § 43-202(2) (Supp. 1975) and her care and custody were given to the Lancaster County Welfare Department. M.L.B. was represented by a guardian ad litem during the proceedings.

On November 18, 1975, J.B.W., following conviction for being an accessory after the fact, was sentenced to 1 year in the Nebraska Penal and Correctional Complex. Upon her mother's release from prison, M.L.B. was placed with her mother on a trial basis. This placement lasted from April of 1977 to July of 1977, when J.B.W. was arrested and again incarcerated. On February 10, 1978, J.B.W. was sentenced to concurrent terms of 2 to 4 years. She was convicted of possession of a forged instrument and burglary; a habitual criminal charge against her was dismissed. During J.B.W.'s incarceration, her daughter was taken to visit her on several occasions for five-night stays.

In early 1979 J.B.W. was transferred from the Nebraska Center for Women to the Work Release Center in Lincoln. When she was paroled in January of 1980, her caseworker told her that in order to regain physical custody of her daughter, it would be necessary for her to get a job, establish a permanent residence, and maintain consistent visitation with her daughter. This was followed by a contract between the caseworker and J.B.W., signed on September 15, 1980. The contract provided that in order to regain physical custody of her daughter, J.B.W.

would have to maintain contact with the caseworker and advise her of address changes, visit M.L.B. on a regular basis, obtain suitable housing, participate with vocational rehabilitation, secure employment, receive counseling, and become involved with parenting classes and homemaker services.

During an afternoon visit with her daughter in February of 1981, J.B.W. took M.L.B. to Colorado and severed all contact with her caseworker. J.B.W. remained in Colorado with her daughter until June of 1981 when J.B.W. was arrested. An anonymous caller telephoned Denver authorities about M.L.B. and delivered M.L.B. to a welfare office. In July of 1981 M.L.B. was flown to Lincoln and returned to the foster home she had lived in since July of 1977 and where she has lived ever since. J.B.W. was sentenced on October 1, 1981, to the custody of the executive director of the Colorado Department of Corrections for a term of 2 years plus 1 year of parole as a result of being convicted of criminal attempt second degree forgery. While in prison, J.B.W. maintained contact with her daughter through letters and phone calls. On October 29, 1981, it came to the attention of the York County Court that J.B.W. was incarcerated in Colorado, and on October 30 the court continued the care, custody, and control of M.L.B. with the Lancaster County Welfare Department.

On May 12, 1982, the York County Court ordered that no visitation take place between J.B.W. and her daughter prior to a review hearing that summer. J.B.W. was released from the Colorado facility, but a September 1 order of the court continued the care and custody of M.L.B. with the Lancaster County Welfare Department until J.B.W. could assure the court that her terms of probation would allow her to remain in Nebraska. Visitation was left to the discretion of the welfare department.

The York County attorney petitioned the court to terminate the rights of the parents of M.L.B. on November 29, 1982, alleging that M.L.B. fell within Neb. Rev. Stat. § 43-247(3)(a) (Cum. Supp. 1982) and that her parents neglected M.L.B. and refused to give her care and protection. On February 4, 1983, the court terminated the father's rights for lack of contact and lack of support for more than 6 months. On March 14 a hearing

was held on the State's petition to terminate J.B.W.'s parental rights. The court dismissed the motion to revoke parental rights because J.B.W. voluntarily relinquished her parental rights on that date. Four days later a motion to rescind the dismissal of the action was filed because J.B.W. executed a revocation of her relinquishment.

The State again filed petitions to terminate J.B.W.'s parental rights on July 14 and July 20, 1983. The petitions alleged that M.L.B. fell within the meaning of § 43-292(2) and (6) (Cum. Supp. 1982). The petitions were filed pursuant to § 43-247(6) (Cum. Supp. 1982). Section 43-292(2) and (6) provides:

> The court may terminate all parental rights between the parents or the mother of a juvenile born out of wedlock and such juvenile when the court finds such action to be in the best interests of the juvenile and it appears by the evidence that one or more of the following conditions exist:
>
> . . . .
>
> (2) The parents have substantially and continuously or repeatedly neglected the juvenile and refused to give the juvenile necessary parental care and protection;
>
> . . . .
>
> (6) Following a determination that the juvenile is one as described in subdivision (3)(a) of section 43-247, reasonable efforts, under the direction of the court, have failed to correct the conditions leading to the determination.

Section 43-247(3)(a) provides:

> The juvenile court in each county as herein provided shall have jurisdiction of:
>
> . . . .
>
> (3) Any juvenile (a) who is homeless or destitute, or without proper support through no fault of his or her parent, guardian, or custodian; or who is abandoned by his or her parent, guardian, or custodian; who lacks proper parental care by reason of the fault or habits of his or her parent, guardian, or custodian; whose parent, guardian, or custodian neglects or refuses to provide proper or necessary subsistance [sic], education, or other

care necessary for the health, morals, or well-being of such juvenile; whose parent, guardian, or custodian neglects or refuses to provide special care made necessary by the mental condition of the juvenile; who is in a situation or engages in an occupation dangerous to life or limb or injurious to the health or morals of such juvenile; .
. . .

J.B.W. filed a demurrer alleging the petition failed to state facts sufficient to constitute a cause of action. The demurrer was overruled.

Trial was held on October 5 and 6, November 3 and 8, and December 12, 1983. On November 8 the court overruled a motion to dismiss the motion to terminate parental rights. On March 7, 1984, the court found that under § 43-292(2) (Reissue 1984) it was in the best interests of M.L.B. to have J.B.W.'s parental rights terminated because J.B.W. was a parent who substantially, continuously, and repeatedly neglected her daughter and refused to give her necessary parental care and protection. The court further found that the matter fell under § 43-292(6) (Reissue 1984) and that J.B.W. had failed, after reasonable efforts under the direction of the court, to correct conditions leading to the determination made by the court. The court terminated J.B.W.'s parental rights.

J.B.W. appealed the order terminating parental rights to the district court for York County, under the provisions of Neb. Rev. Stat. § 24-541.01 (Cum. Supp. 1982). On January 21, 1985, the court affirmed the termination, finding no prejudicial error. J.B.W. filed notice of her intention to appeal the order of the district court on February 14, 1985.

During the periods when J.B.W. was not incarcerated since the birth of her daughter, the longest period of time she has lived in one apartment is the 4- to 5-month period prior to the termination hearing. She often lived with people who possessed criminal records and who have assaulted her. Throughout the 8 years prior to the termination hearing, she has had a pattern of refusing to work with the caseworkers and homemakers who have been assigned to her. She has not shown up for appointments, not answered her door even when she was home, and has generally shown a poor attitude toward working with

those assigned to her. She has never held a full-time job since her daughter was born and has never contributed to her support. On numerous occasions J.B.W. did not show up for scheduled visits with her daughter. Her daughter was aware of J.B.W.'s failure to appear for the visits because the foster mother always informed M.L.B. in advance of the visits. A psychological evaluation of J.B.W. resulted in testimony that she is a person of borderline intelligence.

On the positive side, J.B.W. has expressed her interest on several occasions in having her daughter returned to her. Throughout her daughter's life she has sent her small gifts, many of them handmade. She has kept in touch with her daughter, although this effort appears sporadic. Her crimes, although felonies, have been nonviolent. Her diligence in continuing to attempt to gain custody seems to indicate a sincere desire on her part to be a mother to her daughter. She has stated that she loves her daughter and desires to have her daughter live with her.

We will first dispose of the assignments of error dealing with the anonymous caller and the supplemental petition. It is the general rule that a ground of error must be raised and passed on in the intermediate court before it may be reviewed in a higher court. *In re Estate of Kothe*, 131 Neb. 780, 270 N.W. 117 (1936); 5B C.J.S. *Appeal & Error* § 1808 (1958). This is particularly true with questions relating to the sufficiency of pleadings and the admissibility of evidence. 5B C.J.S., *supra*. The question involving the admissibility of statements made by the anonymous caller was not presented to the district court for review. Likewise, the alleged error regarding the supplemental petition was not presented to the district court. Since there was no ruling by the court below, these assignments of error will not be considered.

Whether there is sufficient evidence for the district court to have terminated J.B.W.'s parental rights is considered next. As stated above, the court terminated J.B.W.'s rights on two grounds, essentially that she neglected her daughter and that she did not rehabilitate herself under the direction of the court. We find that the district court was correct on the first ground, but not on the second.

The evidence clearly and convincingly establishes that the mother has been unable to care for her daughter and that she has failed to take advantage of the resources offered to her through the Lancaster County Welfare Department. M.L.B. has lived with her mother for two short periods only. The first was from April to July of 1977. This placement ended when J.B.W. was arrested for burglary. M.L.B. was not yet 2 years old at this time. The second period was from February to July of 1981 when J.B.W. took M.L.B. to Colorado without permission of the court or the welfare department. This period of custody was also terminated upon J.B.W.'s arrest and incarceration. M.L.B. was 5 years old when this incident occurred.

There is evidence in the record that M.L.B. fears and distrusts her mother. A psychologist and two caseworkers testified that they felt it was in M.L.B.'s best interests that the parental rights of her mother be terminated so that M.L.B. can be given a chance to live in a permanent home.

J.B.W.'s many years of incarceration and the effect they have had on her daughter are also factors contributing to the evidence that it is in M.L.B.'s best interests that her mother's parental rights be terminated. We have said that the fact of incarceration may be considered along with other factors in determining whether parental rights should be terminated. "Furthermore, we cannot disregard the appellant's conduct which resulted in his incarceration . . . ." *In re Interest of Reed,* 212 Neb. 208, 211, 322 N.W.2d 411, 413 (1982). J.B.W.'s repeated law violations and the resulting periods of incarceration have substantially contributed to her daughter's spending most of her life in foster care.

Turning now to the second ground on which the trial court based its decision to terminate parental rights, we find that the trial court improperly used this ground to support its decision. The court found that J.B.W. had failed, after reasonable efforts *under the direction of the court,* to correct conditions leading to the determination made by the court.

"We have held that there is no requirement for a court to implement a rehabilitation plan for the parents of a child found to be dependent and neglected." *In re Interest of V.B. and Z.B.,*

220 Neb. 369, 373, 370 N.W.2d 119, 122 (1985). Likewise, a court does not even have to order a parent to make reasonable efforts to rehabilitate herself. *In re Interest of Brungardt*, 211 Neb. 519, 319 N.W.2d 109 (1982). Further,

> it is not the law in Nebraska that parental rights may not be terminated unless a parent is given a reasonable opportunity for rehabilitation. The court may, within its discretion, order a parent to make reasonable efforts to rehabilitate, and a parent's failure in such rehabilitative efforts is another independent reason justifying termination of parental rights.

*In re Interest of W.*, 217 Neb. 325, 329-30, 348 N.W.2d 861, 864-65 (1984).

Appellant argues that the plan for J.B.W. to make reasonable efforts to rehabilitate herself was not directed by the court and was not subject to court review. It is clear from the record that the plan was directed by the Lancaster County Welfare Department through the caseworker assigned to J.B.W. and her daughter and that it was not directed by the court. Whether or not the plan was *subject* to court review, it does not appear from the record that it ever was reviewed by the court.

The question of whether the natural mother had rehabilitated herself was central to the case in *In re Interest of L.J., J.J., and J.N.J.*, 220 Neb. 102, 368 N.W.2d 474 (1985). In that case the State's plan was both unreasonable in terms of visitation and support payments and was not put into effect under the direction of the juvenile court. It was drawn up by the welfare authorities and was not the subject of any court order or court review.

> While there is no requirement that a juvenile court must institute a plan for rehabilitation of a parent, where the failure of a parent to comply with a rehabilitation plan is an independent ground for termination of parental rights, the rehabilitation plan must be reasonable and must be conducted under the direction of the juvenile court.

*Id.* at 110, 368 N.W.2d at 480. "In transferring its authority, in blank, to the faceless forces comprising a state agency, the juvenile court abdicated its jurisdiction. Such a transfer of

jurisdiction is totally improper." *Id.* at 112, 368 N.W.2d at 481.

The plan drawn up by the caseworker for J.B.W. appears reasonable. It was not, however, conducted under the direction of the court. Therefore, the failure of J.B.W. to rehabilitate herself by following the plan is not a proper ground for termination of parental rights under § 43-292(6) (Reissue 1984).

Nevertheless, upon the record before us we conclude there is clear and convincing evidence that the best interests of the minor child require termination of the mother's parental rights. M.L.B. has spent most of her life in foster care because her mother has failed to rehabilitate herself sufficiently to be able to provide a home for her daughter. We are not hopeful that this situation will improve, and it is unfair to M.L.B. to subject her to years of continuing uncertainty about her status.

AFFIRMED.

KRIVOSHA, C.J., dissenting.

I regret, but I must respectfully dissent from the majority opinion in this case. As noted by the majority, an order terminating parental rights must be based on clear and convincing evidence. *In re Interest of Fant*, 214 Neb. 692, 335 N.W.2d 314 (1983). In my view the evidence in this case does not, by clear and convincing evidence, justify the termination. What we have is a mother who has spent a great deal of time in jail and, therefore of necessity, away from her minor child. While such action is not to be condoned, it is, nevertheless, to be considered when terminating parental rights because of lack of parental care. The reason for that is because we have previously said that incarceration should not be the sole reason for terminating parental rights. See, *In re Interest of Wagner and Russell*, 209 Neb. 33, 305 N.W.2d 900 (1981); *In re Interest of Ditter*, 212 Neb. 279, 322 N.W.2d 642 (1982).

The evidence in this case discloses that whenever the mother is not incarcerated she is with her child and does attempt, as best she can, to provide the child with love and affection. Furthermore, the record discloses that even when she is in prison she has made efforts to remain in contact with the child and to have the child with her whenever possible. While the record discloses that she has not been able to maintain a

full-time job nor fully understand the need to cooperate with the caseworkers, there is some explanation for all of that. As noted by the majority, a psychological evaluation resulted in a finding that she is a person of borderline intelligence. In evaluating her functions, therefore, we should not ignore that fact. We cannot limit motherhood to only those persons of average or above average intelligence. Parents come in all mental sizes, and absent a showing of injury to the child other than or different from that which any family of borderline intelligence which does not come within the grasps of the courts might create, we should not terminate parental rights.

It is not the function of courts to find "better homes," even though that may be in the best interests of the child, where the evidence does not clearly and convincingly justify termination. I would have reversed the decision of the juvenile court.