397 N.W.2d 616 (1986)
224 Neb. 226
In re Interest of D.J., T.J., L.W., L.W., and M.J., Children Under 18 Years of Age.
STATE of Nebraska, Appellee,
v.
L.H.W., Appellant, and S.J., Appellee.
No. 85-787.
Supreme Court of Nebraska.
December 19, 1986.
*617 Jarve L. Garrett of Garrett Law Office, Omaha, for appellant.
Donald L. Knowles, Douglas Co. Atty., and Elizabeth G. Crnkovich, for appellee.
Thomas C. Emery, Omaha, guardian ad litem.
KRIVOSHA, C.J., and BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.
GRANT, Justice.
This is an appeal from an order of the separate juvenile court of Douglas County terminating the parental rights of L.H.W. (hereinafter referred to as appellant), to T.J., M.J., L.W., and L.W. The juvenile court action concerned the following five children. D.J., the oldest child, a male, was born in 1974. M.J. is the youngest, a female, and was born in 1983. T.J., a male, was born in 1975; L.W., a female, was born in 1978; and L.W., a female, was born in 1979. S.J. is the natural mother of all five children. All parties agree that appellant is not the father of D.J. There is no dispute in the pleadings and the evidence that appellant is the father of T.J., L.W. (born in 1978), and L.W. (born in 1979). While the petition does not specifically allege that appellant is the father of M.J., some 5 months after the petition was filed, appellant stipulated that he was the father of M.J.
A petition was filed in December 1984 in the separate juvenile court of Douglas County. The petition alleged that S.J. was the natural mother of all five children; that all the children came within the definition in Neb.Rev.Stat. § 43-247(3)(a) (Cum.Supp. 1982) because of the fault or habits of S.J., their mother; and that all the children came within the meaning of Neb.Rev.Stat. § 43-292(2) (Reissue 1984) because their mother had "substantially and continuously or repeatedly neglected said children, and refused to give said children the necessary parental care and protection...."
The petition also alleged, in its original typewritten form, that T.J., L.W. (1978), and L.W. (1979) were children of appellant and were children within § 43-247(3)(a) by reason of the fault or habits of appellant and that T.J., L.W. (1978), and L.W. (1979) were children within § 43-292(4) because appellant, their natural father, "by reason of debauchery, habitual use of intoxicating liquor or narcotic drugs, or repeated lewd and lascivious behavior, conducts himself so as to be seriously detrimental to the health, morals or well-being of said children...." At a time not shown by the record before us, the name of M.J. was inserted in the petition, in handwriting, in each of the general allegations concerning the status of the children with regard to appellant, thus alleging in amended form that M.J. was a child within the meaning of §§ 43-247(3)(a) and 43-292(4). The addition of the name of M.J. in those counts is *618 explained by the fact that the court granted leave to add M.J.'s name to the status allegations of the petition. The juvenile court, however, did not grant the State's motion to add M.J.'s name to the prayer for termination of appellant's parental rights, nor was the petition so amended.
The prayer of the petition asked that the court make appropriate orders concerning the children; that the court terminate the parental rights of S.J. as to all the children; and that the court terminate the parental rights "between [appellant], natural father of [T.J., L.W. (1978), and L.W. (1979)], and [T.J., L.W. (1978), and L.W. (1979)]." The relief requested in the petition, as against appellant, did not mention M.J.
After preliminary matters were disposed of, adjudication hearings were held on February 25, March 21, May 7, May 8, May 30, and June 19, 1985. At the conclusion of the adjudication hearings, the court found, by its order filed July 29, 1985, that S.J. was the natural mother of the five children; that appellant was the natural father of T.J., L.W. (1978), and L.W. (1979); that T.J., L.W. (1978), and L.W. (1979) were "children within the meaning of Section 43-247(3a) and Section 43-292(4) ... Cum., Supp., 1982, insofar as their natural father, [appellant], is concerned." On September 24, 1985, the court entered its order terminating the parental rights of S.J. to all five children and terminating the parental rights of appellant to T.J., L.W. (1978), L.W. (1979), and M.J. S.J. did not appeal from this order; L.H.W. did appeal.
In this court appellant assigns six errors, which may be consolidated into three: (1) That the trial court erred in admitting the testimony of the minor children; (2) That the trial court erred in admitting into evidence the testimony of the police officers and the social workers, because such testimony was hearsay; and (3) That the court erred in finding that there was sufficient clear and convincing evidence to support the court's order terminating appellant's parental rights. We affirm the order of the juvenile court as to the oldest three children, T.J., L.W. (1978), and L.W. (1979). We reverse the order of the juvenile court as to the youngest child, M.J., and remand for further proceedings as to her.
We first note that an order terminating parental rights is reviewed de novo on the record in this court. In re Interest of A.L.N., 223 Neb. 675, 392 N.W.2d 780 (1986). Where the evidence is in conflict, we give great weight to the fact that the trial court observed the parties and witnesses and judged their credibility. In re Interest of M.L.B., 221 Neb. 396, 377 N.W.2d 521 (1985). Such an order terminating parental rights must be supported by clear and convincing evidence, and the primary consideration in such cases is the best interests of the children. In re Interest of A.L.N., supra.
The record shows the following. S.J. had a long history of moving in and out of appellant's home. She always took her oldest child, D.J., and the baby, M.J., with her when she left, leaving the other three children in appellant's custody.
During one of her periodic stays with appellant, the mother informed the Omaha police on November 16, 1984, of her suspicions of sexual abuse of her daughter, L.W. (1979), by appellant. Officers investigated the report. As a result of the investigation, appellant was charged with three counts of first degree sexual assault. A preliminary hearing was held on these charges on December 10, 1985. At this hearing S.J. testified that L.W. (1978) and L.W. (1979) had told her, in detail, that appellant had assaulted each of the girls by sexual penetration and that D.J. had told her that appellant had made him perform sexual acts. At this hearing L.W. (1978) and D.J. each testified as to the sexual acts appellant had committed as to them. L.W. (1979) was called as a witness but did not respond audibly to any questions put to her by the county attorney or the court. At the conclusion of the hearing, appellant was bound over to district court for trial on two counts. The third count, apparently concerning L.W. (1979), was dismissed.
After the preliminary hearing S.J. told the lawyer representing appellant in the *619 pending criminal case that she had lied to the police when she had first told them of appellant's sexual abuse of L.W. (1978) and that she had told the children to lie to the police and at the preliminary hearing concerning appellant's actions toward the children. Although the record is not clear, it appears that the criminal charges against appellant were dismissed without further action.
At the adjudicatory hearings in the juvenile court, D.J. testified that appellant had forced him to commit fellatio on appellant. T.J. testified he had witnessed one of the incidents in which D.J. was performing that act on appellant and that appellant had tied T.J. to a bed and whipped him with a belt. L.W. (1978) testified that appellant had placed his penis between her legs on many occasions and had done the same thing to L.W. (1979). L.W. (1979) testified to similar activities on appellant's part. Two police officers testified as to their investigation after S.J.'s first call to the police department concerning appellant's alleged sexual abuse of the children. Two social workers also testified as to their involvement in regard to the children. The physician who examined the children after S.J.'s first complaint about the sexual abuse of the children testified that there was no evidence of abrasions or sexual penetration of the children, but testified that he did not have an opinion as to whether the children had been sexually abused. The doctor later testified that most sexual abuse of children can occur without sexual penetration.
Sharon Van Butzel, a hospital social worker, testified that she interviewed the mother, who said that the children had been sexually assaulted by the appellant.
Yolanda Herrera, a Child Protective Services worker, interviewed the children and the mother. Herrera testified that the mother told her that both L.W. (1978) and D.J. had said they were sexually abused by appellant, that the mother's relationship with appellant was frequently violent, that appellant had "busted her head with a bat" and had hurt the mother many times, and that appellant had tied the mother to a bed and beaten her with an electrical cord because she refused to go out and prostitute for him. Herrera testified that she talked with the four older children, who said they were afraid of the appellant. She further testified that D.J. told her that the appellant "did bad things to me like rape. He made me do things to him"; that T.J. told her he had been stripped, tied to a bed, and beaten and that he had observed his half-brother D.J. performing oral sex with the appellant; that L.W. (1978) had stated that the appellant humped her and she could not remember when he did not hump her; and that L.W. (1979) told her that the appellant "humped her and so did [D.J.]." The children's understanding of the word "humped" was set out in the record.
The appellant did not testify at the hearings. He was called as a witness but invoked his fifth amendment privilege. The thrust of his defense, as presented by his counsel, was that his children and their mother had fabricated the stories about sexual and physical abuse by the appellant.
At trial the four older children, then ages 10, 9, 6, and 5, were permitted to testify. Prior to the children's testimony, the trial court questioned each child to determine his or her ability to answer simple questions and to distinguish between the truth and a lie. Some of the testimony was inconsistent, but each child reported incidents of sexual or physical abuse by the appellant.
S.J. was called as a witness by appellant. She testified to being a prostitute and to having sexual relations with her children D.J., L.W. (1978), and L.W. (1979). S.J. also testified that she had lied in her statements to the police and in the preliminary hearing on the criminal charges against appellant, and had coached the children to lie.
Regarding the first error assigned, appellant argues that the testimony of the children should not have been admitted into evidence because it was incompetent and inconsistent. The trial court determined after questioning each child that each was capable of answering simple *620 questions and that each knew the difference between the truth and a lie. In our de novo review of that testimony, we conclude that each child responded satisfactorily, and all were competent to testify. Any inconsistency in the testimony of the children goes to their credibility as witnesses. The record does show that each child gave some inconsistent testimony about the incidents of sexual and physical abuse. There was testimony that the mother did tell the children what to say to the authorities when she reported the incident that initiated this action. However, the children also gave testimony of other sexual or physical abuse by appellant at times and places unrelated to this last occasion. Where the evidence is in conflict, we must give great weight to the fact that the trier of fact observed the parties and witnesses and judged their credibility. In re Interest of M.L.B., 221 Neb. 396, 377 N.W.2d 521 (1985). We find no error in the trial court's admission of testimony by the children.
The second error assigned was that the testimony of the police officers and social workers was hearsay and should not have been admitted into evidence. The trial court overruled appellant's objection to admission of the testimony and determined that the testimony qualified under the exception to the hearsay rule in Neb.Rev. Stat. § 27-801(4)(a)(ii) (Reissue 1985), which provides:
(4) A statement is not hearsay if:
(a) The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is ... (ii) consistent with his testimony and is offered to rebut an express or implied charge against him or recent fabrication or improper influence or motive....
The declarants in the instant case were the children and their mother, S.J. All testified at both the preliminary hearing and at the trial. They were all subject to cross-examination at the trial in the juvenile court. The testimony by the police officers and social workers was consistent with the testimony of the children and consistent with S.J.'s testimony prior to her recantation, and was offered to rebut the appellant's assertion that the children had recently fabricated their testimony. Under the circumstances in this case, it is clear that the statements about which Officers Sundermeier and Claussen and social workers Van Butzel and Herrera testified were admissible. State v. Gregory, 220 Neb. 778, 371 N.W.2d 754 (1985).
The last error assigned is that the court erred when it found that the State met its burden of proof by clear and convincing evidence. Appellant argues that the record is devoid of any clear and convincing evidence necessary to support the allegations in the petition. He claims that he was made a victim of a vicious plot by S.J. Appellant maintains that S.J. became a truthful witness after she recanted her original charges against him.
In our de novo review of the record, we find that the majority of the evidence contained in the five volumes of testimony is consistent with the allegations of sexual and physical abuse of the children by both parents. The testimony of the children is consistent that they were sexually abused by the appellant. The testimony of the police officers and social workers refutes the claim that the children were fabricating the allegations. Several witnesses testified to sexual activity between the children as well.
The record shows that S.J. is an admitted prostitute and that she had sexual relations with her children D.J., L.W. (1978), and L.W. (1979). Although S.J. has not appealed from the order terminating her parental rights, we feel it necessary to state that that order of termination of her parental rights is fully supported by clear and convincing evidence, most of which was admitted by S.J. Appellant suggests that this court reverse the order of the trial court as to him on the basis of the testimony of S.J. at the time she changed her testimony at the adjudication hearing. As stated earlier, this court has said that where the evidence is in conflict, great weight is given to the fact that the trial *621 court observed the parties and witnesses and judged their credibility. In re Interest of M.L.B., supra.
The record in this case leads us to the conclusion that the evidence clearly and convincingly establishes that there was sexual and physical abuse of the four older children by the appellant, and conduct by the appellant which was seriously detrimental to the health, morals, and well-being of all the children. The record also shows that these children have been subjected to one of the most unhealthy and unwholesome environments that people in our society could imagine and that appellant permitted such environment to exist. The best interests of the children in this case demand that the parental rights of the appellant be terminated. We believe that the decision of the separate juvenile court of Douglas County was correct and must be affirmed as to T.J., L.W. (1978), and L.W. (1979).
We turn now to consideration of the case as it affects the youngest child, M.J. The issues in this consideration have not been presented, but this court, at its option, may note plain error. State v. Christiansen, 217 Neb. 740, 351 N.W.2d 67 (1984). In the petition filed on December 6, 1984, the prayer for relief did not ask for the termination of parental rights between M.J. and the appellant. The record indicates that at the outset of this case, on two separate occasions the court stated that only three of the children were the natural children of the appellant. The fact that M.J. is also appellant's natural child came to light during the trial when appellant stipulated that he was M.J.'s father.
Although the petition was apparently amended (by the interlineation referred to above) to add allegations concerning her status with regard to appellant, the petition was never amended to conform to the evidence as to M.J.'s alleged parentage, nor was the petition amended to seek the termination of appellant's paternal rights to M.J. Additionally, the record does not disclose any evidence of sexual abuse of M.J., although obviously there was a great deal of evidence of neglect by appellant.
At the conclusion of the adjudicatory portion of the hearing, the juvenile court made specific findings as to the status of all of the children with regard to S.J., and specific findings as to the status of T.J., L.W. (1978), and L.W. (1979) with regard to appellant. No such findings were made with regard to appellant and M.J., and, indeed, the testimony reflects little as to the relationship between M.J. and appellant.
The appellant has not been given any notice of an action to terminate his parental rights to M.J., as is required under Neb. Rev.Stat. § 43-291 (Reissue 1984), although the juvenile court ordered termination of parental rights between M.J. and the appellant.
We affirm the action of the juvenile court in terminating appellant's parental rights as to T.J., L.W. (1978), and L.W. (1979). We reverse the order of the juvenile court terminating the appellant's parental rights to M.J. and remand for further proceedings for determination as to that issue.
AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.