IN RE INTEREST OF R.L.T., A CHILD UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. A.J.T., APPELLANT.
376 N.W.2d 310

Filed November 8, 1985. No. 85-244.

James G. Sharp of Everson, Noble, Wullschleger, Sutter, Sharp, Korslund & Willet, for appellant.

Jerry L. Shelton, Deputy Gage County Attorney, and Duane W. Smith of Dalke, Smith & Harris, guardian ad litem, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

HASTINGS, J.

This is an appeal from the judgment of the district court which affirmed the decree of the county court sitting as a juvenile court. The county court had terminated the parental rights of A.J.T. to her female child, R.L.T., age 3. We affirm.

The child was born out of wedlock. The mother and child became involved with the juvenile court system with the filing of a petition on June 3, 1982. The petition alleged that the child was one as described in Neb. Rev. Stat. § 43-202(2)(e) (Reissue 1978), in that said child was in a situation dangerous to life and limb or injurious to the health or morals of such child in that the mother, due to her emotional condition, was incapable of providing proper care for said child.

The mother admitted the allegations of the petition, and the child was placed in the temporary custody of the Gage County Division of Public Welfare. The mother was ordered to undergo a psychological examination and evaluation.

According to the testimony of Dr. Wayne R. Price, a clinical psychologist, A.J.T. suffers from a personality disorder, a long-term problem which is manifested by impulsivity, unstable personal relationships, inappropriate intense anger, affective

instability, difficulty in being alone, and physically self-damaging acts.

The testimony of police officer Alan Baldwin reveals that he was called to the scene of an apparent domestic disturbance in the city of Beatrice. He found A.J.T. to be highly upset and emotional and engaged in a rather violent argument with a man. Also present was A.J.T.'s daughter, R.L.T., who at that time was not quite 5 months of age. Further, as testified to by Officer Baldwin, she threatened to take her child and walk the streets until they both "froze to death."

There was testimony at the adjudication hearing from a Mrs. Johnson with whom A.J.T. and her child resided prior to June 3, 1982, that A.J.T. did not properly bathe and feed the child; that she would become upset with the child; that on one occasion she slapped the child; and that at another time she had given the child almost a full can of beer.

As part of a plan of rehabilitation, the county court, in addition to the psychological testing and counseling, ordered A.J.T. to establish a permanent residence, maintain contact with R.L.T. through visitation, attend parenting classes, and obtain employment. An order to this effect was entered on January 7, 1983.

During the intervening period from the entry of the order setting forth the plan of rehabilitation to the order terminating parental rights on October 31, 1984, A.J.T. left Beatrice to attend a Job Corps training program in Utah. She left without completing the program to follow a boyfriend to Boulder, Colorado. She returned to Beatrice, living with friends for short periods of time, and then she sought readmission to the Job Corps program. However, in the meantime, she obtained employment with a carnival, and left Nebraska in August. She went to Texas, took a position as a topless dancer in Corpus Christi, then left for California, where she was employed for a time as a seminude model. While living in California, A.J.T. was arrested for vandalism, and she eventually served 21 days in jail for battery of a police officer. She failed to keep Social Services adequately informed of her whereabouts as required by her plan of rehabilitation.

Not only did A.J.T. fail to comply with the requirements of

the rehabilitation plan as to psychological counseling but she failed to return to Beatrice for review hearings as requested. Upon her return to Beatrice for the termination hearing, she engaged in a fight in a local tavern.

A.J.T. was reevaluated by Dr. Price on October 13, 1984. He found that she still exhibited characteristics of a borderline personality disorder and will continue to do so, the duration and the intensity of which will be dependent upon her involvement in long-term therapy. Dr. Price testified that in his opinion there is a chance of impulsive, aggressive outlets of anger by A.J.T. He further said: "The angry outbursts can be inward towards herself or outwards towards a target that's there without intending any harm to the individual or the object, so I see that if the anger is not controlled, the child could be at risk."

Counsel for the mother argues that the evidence was not clear and convincing that the mental illness of A.J.T. would continue for a prolonged and indeterminate period. We do not agree. Dr. Price did concede that there had been some improvement in A.J.T.'s condition since his initial meetings with her, perhaps due in part to a delayed impact of earlier counseling sessions. However, he emphasized that continued improvement would require long-term, regular psychotherapy, and without that it would not be likely that there would be a significant change in her condition.

The record is rather clear and convincing that A.J.T. has not followed the recommendations of counseling spelled out in her rehabilitation plan, and her attitude, as expressed by her, holds out little hope that she will change in that regard. She still has no established home nor visible means of support.

It is not necessary that the court await the time that the child shows permanent scars of her mother's anger and impulsivity before acting to terminate this relationship. *In re Interest of S.P., N.P., and L.P., ante* p. 165, 375 N.W.2d 616 (1985).

From a de novo review of the record, we agree with the juvenile court that it has been established by clear and convincing evidence that A.J.T. now suffers from a personality disorder likely to last for an indefinite period, and which is likely to subject her child to either physical or emotional injury, and that it is in the best interests of said child that the parental

rights of A.J.T. be terminated.

The judgment of the district court in affirming the decree of the county court is correct and is affirmed.

AFFIRMED.