IN RE INTEREST OF C.G.C.S., A CHILD UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. C.S., APPELLANT, D.S. AND B.S., INTERVENORS-APPELLEES.
407 N.W.2d 196

Filed June 12, 1987.   No. 86-655.

Larry D. Ohs, for appellant.

Laurie J. Campbell, Deputy Lancaster County Attorney, for appellee State; Thomas E. Keefe of Peterson Nelson Johanns Morris & Holdeman, for intervenors-appellees; and Randall T. Smith, guardian ad litem.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

HASTINGS, J.

The mother of C.G.C.S., the juvenile, has appealed from the order of the juvenile court terminating her parental rights. She assigns as error the admission of certain testimony relating to her mental illness; the finding that the evidence clearly and convincingly supported the order of termination; the finding that it was in the best interests of the juvenile that the parental rights be terminated; and the refusal to grant a continuance of the hearing at which parental rights were terminated.

The juvenile was born to the appellant, an unwed mother, on July 14, 1982. When the child was 3 days old, Child Saving Institute received the child from appellant for voluntary foster care. The child was placed with one set of foster parents immediately and, on October 1, 1982, was placed in the foster care of the intervenors, where he remained at the time of the final hearing. The foster parents were allowed to intervene in

this action because the juvenile court concluded that they were necessary parties to these proceedings. No objection has been raised to their appearance, and we do not discuss it.

On September 10, 1984, the juvenile was referred to the Nebraska Department of Social Services from Child Saving Institute when it was learned that the appellant had given birth to another child in April of 1984, which child was placed with the Missouri Department of Social Services when the child was 2 weeks old. Prior to that time, Child Saving Institute had worked with appellant to help her work out a reunification plan, during which she would learn the necessary child care skills. That plan was not carried out because appellant left Nebraska about 2 weeks later, and when she recontacted the agency, it was from Missouri, where she was hospitalized at the time. A second reunification plan was worked out with the appellant in August of 1983, which was to last a year. At the end of the year certain parts of the plan had not been carried through.

In a medical and psychiatric assessment conducted by the Missouri Department of Mental Health on July 9, 1984, appellant reported long-term psychiatric problems. Appellant, who at the time was 26 years old, was found to be immature, naive, and tangential, reporting excessive dependency and attachment to her mother.

On December 11, 1984, the juvenile court found the juvenile to be a child as defined by Neb. Rev. Stat. § 43-247(3)(a) (Cum. Supp. 1982), lacking proper parental care through no fault of the mother. Specifically, the court found that the appellant was not able to resume care of the juvenile. Temporary legal custody of the juvenile was granted to the Department of Social Services, with reasonable rights of visitation by the appellant as long as the visitations did not produce anxiety and emotional disturbance in her child.

The Child Protective Services caseworker for the Department of Social Services expressed that she had a willingness to apply for funds from the reunification program to assist with visitations. However, as of March 5, 1985, that caseworker testified that appellant had not visited with her son since the last court hearing. The only previous court hearing

which appears from the record was conducted on December 11, 1984.

At the time of the next hearing, held on July 30, 1985, on the motion of the guardian ad litem for the juvenile to suspend visitation, this same caseworker testified that only two visitations had been held, one on May 1 and 2, 1985, and the one on July 15 which precipitated the hearing. On that latter date, according to the testimony of the caseworker, it was a very stressful visit. The appellant accosted her son, who had told her that he did not want to see her. She threatened to grab him and take him away to St. Louis. She verbally abused and physically attacked the caseworker in the presence of the juvenile. This caused the juvenile great emotional stress, nightmares, and sleeplessness, even up until the final hearing on July 10, 1986.

In addition to the testimony of the caseworker and the foster mother, as detailed above, a psychiatrist testified that, in his opinion, from prior observations of appellant in a court proceeding, she showed typical signs of long-term paranoid schizophrenia. In his opinion it would be detrimental to have any further contact between the juvenile and his mother.

At the conclusion of the July 30, 1985, hearing, the juvenile court ordered personal visits by the appellant to be suspended until such time as she presented proof that she had corrected her behavior and could visit her child without producing anxiety and emotional disturbance in the child. No such proof has ever been offered.

The hearing conducted on July 10, 1986, to terminate parental rights was substantially a rehash of the previous hearings. In addition, there was testimony by the foster mother that since the July 1985 hearing, the appellant had made two telephone calls to her, one very abusive, and had written two letters. In fairness, it should be said that the boy refused to talk to his mother, and the foster mother did not answer the letters addressed to the juvenile because he said he did not want them answered.

There was also testimony that three different mental health examinations had been set up for appellant, the last being in February of 1986, none of which appointments she kept. Her attorney-guardian ad litem argued that she missed those three

appointments because, at the time of the first appointment, she did not have transportation arranged; at the time of the second one, she had just started working; and at the time of the third one, she was in the hospital. There is nothing else in the record to substantiate those claims. The record does not disclose that she ever contributed anything to her son's support or that she ever worked longer than 2 or 3 weeks at a time.

The juvenile court found at the hearing on the petition to terminate parental rights that appellant had failed to comply with any plan for reunification and had failed to submit as ordered to various mental health examinations. Additionally, the court found that appellant had failed to demonstrate that she could accomplish visitations without producing anxiety and emotional disturbance of the child. Finally, the court concluded that grounds existed for the termination of the parental rights of appellant under Neb. Rev. Stat. § 43-292(2) and (6) (Reissue 1984): "The parents have substantially and continuously or repeatedly neglected the juvenile and refused to give the juvenile necessary parental care and protection"; and "[f]ollowing a determination that the juvenile is one as described in subdivision (3)(a) of section 43-247, reasonable efforts, under the direction of the court, have failed to correct the conditions leading to the determination."

Appellant first argues that the court erred in receiving the testimony of the psychiatrist because there was no allegation in the petition to terminate parental rights for the reason that appellant was "unable to discharge parental responsibilities because of mental illness . . . ." § 43-292(5). There is nothing in the findings of the court to reveal that it relied in any way on such evidence.

A presumption arises when questions of fact are tried by the court that it will consider only such evidence as is competent and relevant. *Barber v. Barber*, 207 Neb. 101, 296 N.W.2d 463 (1980). In any event, we review an order terminating parental rights de novo on the record and will not consider evidence which is erroneously admitted. There was no prejudice to the appellant.

The other specific error claimed was the refusal of the court to grant to appellant a continuance of the hearing on the

petition to terminate. Hearing was originally set for June 4, 1986. On motion of appellant's attorney-guardian ad litem, filed on May 30, requesting that the case be continued until July, it was rescheduled for July 10. On that date, counsel once again moved for a continuance, alleging that his client could not get to court from St. Louis, since her mother was unable to bring her. The mother had been injured in an accident in March. There was no showing that any effort had been made since May 30 to arrange for other means of transportation. In the past, as is apparent from the record, the Department of Social Services had made arrangements for her transportation for visitations.

Neb. Rev. Stat. § 25-1148 (Reissue 1985) provides that an application for a continuance shall be by written motion and supported by affidavits. No reversal by the Supreme Court of an order granting or refusing a continuance shall be had, except where there has been an abuse of sound legal discretion by the lower court. At the time of trial, the juvenile had been in foster care for the entire first 4 years of his life. The court had been frustrated time and again by the appellant's failure to comply with its orders. There was no abuse of discretion.

Finally, we deal with appellant's claim that the evidence failed to clearly and convincingly support the order of termination and the finding that termination would be in the best interests of the juvenile.

We have said many times, in effect, that it is not necessary that the court await the time that the child shows permanent scars of the mother's inabilities and shortcomings before acting to terminate the relationship. *In re Interest of R.L.T.*, 221 Neb. 251, 376 N.W.2d 310 (1985). Generally, it is in the best interests of the child that a final disposition be made without undue delay. We will not gamble with a child's future, awaiting uncertain parental maturity. *In re Interest of M.L.B.*, 221 Neb. 396, 377 N.W.2d 521 (1985).

This child has been forced by the recalcitrance of his mother to wait his entire lifetime. He has known no parents but his foster parents. The evidence is overwhelming that to force him out of this relationship would create emotional trauma of undetermined dimensions.

Appellant not only failed to follow the plan of the court to

rehabilitate herself, she failed to make reasonable efforts on her own to bring about such rehabilitation. *In re Interest of W.*, 217 Neb. 325, 348 N.W.2d 861 (1984). As far as the mother ever being able to raise this child, the situation is hopeless.

The judgment of the juvenile court is affirmed.

AFFIRMED.

KRIVOSHA, C.J., concurs in the result.