IN THE NEBRASKA COURT OF APPEALS

MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

IN RE INTEREST OF KELSEY B.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF KELSEY B., A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLANT,

V.

DANIEL H., APPELLEE.

Filed September 26, 2017.    No. A-17-260.

Appeal from the Separate Juvenile Court of Douglas County: ELIZABETH CRNKOVICH, Judge. Reversed and remanded for further proceedings.

Donald W. Kleine, Douglas County Attorney, and Patrick C. McGee for appellant.

Brady J. Hoekstra for appellee.

MOORE, Chief Judge, and BISHOP and ARTERBURN, Judges.

BISHOP, Judge.

The State filed a supplemental petition alleging that Kelsey B. was a child as defined by Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016) through no fault of her father, Daniel H. The separate juvenile court of Douglas County did not accept Daniel's plea, and after a subsequent evidentiary hearing wherein the court did not allow the State to call Daniel as a witness, it dismissed the supplemental petition, finding there was insufficient evidence to support the allegations. The State appeals, claiming the court erred by not allowing Daniel to be called as a witness by the State. We reverse and remand for further proceedings.

- 1 -

BACKGROUND

Kelsey, born in 2001, is the daughter of Daniel and Elizabeth W. On October 27, 2016, she was removed from Elizabeth's care and custody because Elizabeth subjected her to inappropriate physical discipline. Pursuant to an ex parte order, Kelsey was placed in the temporary custody of the Nebraska Department of Health and Human Services (DHHS), and into foster care.

The State filed a petition on October 28, 2016, alleging that Kelsey was a child as defined by § 43-247(3)(a) because she lacked proper parental care by reason of the faults or habits of Elizabeth. Because Elizabeth is not part of this appeal, she will only be discussed as necessary.

On November 10, 2016, the State filed a supplemental petition alleging that Kelsey was a child as defined by § 43-247(3)(a) because she was homeless or destitute, or without proper support *through no fault* of Daniel, in that:

> A. On or about October 31, 2016, Daniel H[.] reported that he was not able to control [Kelsey's] behaviors including running away, truancy, inappropriate sexual contact via internet with grown men, drug activity, stealing, suicidal ideations and attempts, throwing things in the home, physical altercations with siblings, and refusing to stay home.
>
> B. [Kelsey] does not want to return to [Daniel's] home.
>
> C. Daniel H[.] is unable [sic] provide the necessary level of care and supervision to maintain [Kelsey] in his home.
>
> D. Due to the above allegations, [Kelsey] is at risk for harm[.]

The State also filed an ex parte motion for immediate temporary custody of Kelsey on November 10, which was granted by the court.

In December 2016, Kelsey was adjudicated to be within the meaning of § 43-247(3)(a) based on Elizabeth's admissions to allegations in the petition.

An adjudication hearing on the supplemental petition was held on January 5, 2017. Daniel admitted the allegations in the supplemental petition entirely. In its factual basis, the State noted Kelsey was 15 years old, and at the time of filing she resided in Douglas County, Nebraska. The State then offered exhibit 2, which was received into evidence without objection. Exhibit 2, was the November 9, 2016, "affidavit for removal of minor child from parental/custodial home" authored by Mary Potmesil, a children and family specialist with DHHS (this is the same affidavit that was attached to the State's ex parte motion for immediate temporary custody filed on November 10, the date the supplemental petition was also filed). The affidavit states:

> . . . .
>
> 2. On or about 10/27/2016, Kelsey was removed from her mother . . . due to physical abuse and placed in kinship foster home . . . .
>
> 3. After removal on 10/27/2016, Kelsey was not placed with her father Daniel H[.] due to Kelsey reporting that she had been kicked out of the home in February of 2016, in spite of Daniel H[.] having sole custody of Kelsey, and been [sic] residing with [her mother] ever since. Daniel H[.] stated that Kelsey had run in February, and that when police had been contacted, they suggested Kelsey go to [her mother's] home. [The mother] reported that Daniel had contacted her and stated that he was unable to control Kelsey's

behaviors. Kelsey stated she did not wish to go back to Daniel's home when placement was being considered. Kelsey has refused all but initial scheduled visits with Daniel H[.]

4. On or about 10/31/2016, Daniel [H.] stated to CFSS Potmesil that he loved Kelsey and would like her in his home, but that he was not able to control Kelsey's behaviors including running away, truancy, inappropriate sexual contact via internet with grown men, drug activity, stealing, suicidal ideations and attempts, throwing things in the home, physical altercations with siblings, and refusing to stay in the home when living there. Daniel H[.] stated he felt the best option for Kelsey's placement was where she could have full care and full time supervision, being able to talk with someone when she needs to, and being removed from the entire situation with [her mother].

5. That there was no appropriate person for [Potmesil] to release [Kelsey] to which [sic] could provide for [Kelsey's] safety and stability.

6. That in the opinion of [Potmesil], . . . placement of [Kelsey] into temporary foster care is a matter of immediate and urgent necessity for the protection and safety of [Kelsey] and that this situation presented a safety issue to [Kelsey] and precluded reasonable efforts to allow [her] to remain in the parental/custodial home.

The Court asked Daniel's counsel if he accepted the factual basis, and counsel responded, "Yes, Your Honor."

The following conversation then took place between the court and the State.

THE COURT: . . . [Y]our allegation is that Daniel H[.] reported that he's not able to control the child's behaviors. Are you asking that I make a finding simply that he reported this or that he was not able to control the child's behaviors?

[The State]: That he was not able to, Your Honor.

THE COURT: All right. And where in Exhibit [2] does it tell me, other than his statement, why he was not able to do this?

[The State]: Judge, it is not contained in the exhibit. However --

THE COURT: Then you have not provided the Court a factual basis. You have merely provided the Court a conclusion.

[The State]: Well, Judge, the evidence would be that he has reported to HHS that he's unable to control the child.

THE COURT: Did he say why he was unable? Isn't that at the heart of taking jurisdiction?

[The State]: Judge, I feel that the evidence is sufficient.

THE COURT: I am telling you it is not. His mere statement that he is not able to care for her is not proof that he is not able to care for her. . . . [Y]ou have not provided a factual basis.

The court noted the State had provided no evidence of what efforts Daniel made to address Kelsey's behavior, including counseling, evaluations, structure, or support. It was not willing to make a finding that Daniel was unable to care for Kelsey by "the mere statement he made that he was unable to." The juvenile court did not accept Daniel's plea, as noted in its order filed on January 9, 2017. The adjudication hearing was continued to February 21.

At the adjudication hearing on February 21, 2017, two witnesses testified for the State. Potmesil testified she is an initial assessment worker with DHHS and investigates intakes of child abuse and neglect. On October 27, 2016, Potmesil received an intake alleging Kelsey (15 years old) had been physically abused by her mother, and Potmesil conducted an investigation. When she contacted Daniel the night of Kelsey's removal, he explained there were circumstances preventing Kelsey from being in his home. Daniel explained that if he tried to enforce house rules Kelsey would run away, she had run away numerous times leading him to contact the police seven times, she had missed multiple days of school, and she was engaging in risky behavior. Daniel had also previously called child protective services about Kelsey's behaviors (Potmesil did not know the dates of those calls, and the record is not clear as to whether those calls resulted in investigations). After conducting an investigation, Potmesil authored an affidavit for removal of Kelsey. That affidavit (exhibit 2) was again received into evidence without objection. (This is the same exhibit received at the hearing on January 5, 2017, the content of which was set forth previously.) Potmesil opined that Kelsey's behaviors put her at risk if she were back in Daniel's home because "she's not willing and/or able to follow the rules of the house, if she's running away, if she's engaging in sexual activity, . . . she was hanging around with people that were utilizing drugs. . . . [D]ue to her age, he couldn't force her to comply with household rules[.]" Potmesil further opined that Kelsey's removal was not Daniel's fault.

A pediatric nurse practitioner from Project Harmony also testified. She performed a forensic examination of Kelsey on October 27, 2016, following a report that Kelsey had been physically abused by her mother. The exam report (exhibit 9) was received into evidence without objection. The report notes Kelsey was pregnant at the time. The nurse practitioner testified that during the exam, Kelsey reported she had lost weight, had not been eating well, and thought she had an eating disorder. She also reported she had intentionally ingested pills that summer with the intention of killing herself (Kelsey said her mother forced her to vomit but did not seek medical or mental health care for Kelsey). Kelsey continued to struggle with thoughts of hurting herself and has a history of "cutting," having last done so within two weeks of the exam. She also reported regular use of alcohol and marijuana. Regarding school attendance, Kelsey told the nurse practitioner she does not remain at school for a full day, instead, she walks into the front door of school and then goes out the back door. The nurse practitioner believed Kelsey should restart mental health therapy, and would likely need a full mental health evaluation.

The State then attempted to call Daniel as a witness, but the court said, "You cannot call him. He is the dad." After an off-the-record discussion, the following occurred on the record:

[The State]: Judge, that is all of my evidence at this time, with the exception of [Daniel].

THE COURT: And you have indicated on the record you would like to make an offer of proof of what he would testify [sic] if called to testify?

[The State]: Yes, Judge.

THE COURT: And I said you may do so at the conclusion of the hearing. Unless his attorney objects and then I will have to rule on that. But you are resting otherwise?

[The State]: Yes, Judge.

Daniel's counsel and the guardian ad litem both stated they had no evidence to present. The State then said it would still like to make an offer of proof as to what Daniel would testify to. The court responded, "I heard you, and I did tell you you are welcome to do that when the matter is concluded. I suspect you are misunderstanding. An offer of proof is not something this Judge will consider as evidence." The court continued, "I think you do not need to ask repetitively." The court then stated it was dismissing the supplemental petition "for lack of evidence under the no-fault." It reasoned as follows.

> Number one, this individual has custody, but he allowed this child to reside with her mother repeatedly. There is testimony that he called the police. There is testimony that she has many challenging mental health issues, which would be clear based on the behavior that has been testified to. There is no evidence, other than calling the police occasionally, of what steps, if any, [Daniel] took. There is no evidence that he tried to get her into counseling. There is no evidence that he had her hospitalized. There is no evidence that he consulted with school official about her truancies. None.
>
> Additionally, the testimony presented by the State shows that indeed she needs mental health evaluations. There is no evidence that indicates that [Daniel] is unable, either financially, psychologically, or in any other way, to get her the evaluations that she needs. The evidence of [DHHS] focused solely on the child's behaviors. This is not a petition under a 3B. Neither is it a delinquency petition.
>
> The evidence does not support that this child comes within the meaning of [§ 43-247(3)(a)(1)] because she is homeless, destitute, or without proper support through no fault of Daniel H[.] Therefore, it is dismissed for lack of evidence.
>
> We are adjourned.

The State once again asked to make its offer of proof, but the court responded:

> We are adjourned.
>
> I do not know what you are doing . . . I think you are kind of trying to set me up here. But it is quite offensive, your obnoxiousness in this regard in this case. You would be wise to stop.
>
> You may do your offer of proof as I directed when we are adjourned and when I have left.

After the judge said "[w]e are adjourned" and left the courtroom, the State made its offer of proof. It stated that, if allowed, Daniel would have testified he reported Kelsey missing at least six times and made numerous police reports that did not result in a "missing report"; he called child protective services because he did not know what to do; he sought group home placement for Kelsey on two occasions, one of which was denied because Kelsey sabotaged the interview; he sought services at Girls Incorporated, due to Kelsey's running away and defiance; he made numerous contacts with Kelsey's teachers and school counselor; and he set up a therapy appointment(s) for Kelsey, which she missed due to her running behaviors.

In its order filed on February 21, 2017, the juvenile court dismissed the supplemental petition for lack of evidence. The State has timely appealed the juvenile court's order.

ASSIGNMENT OF ERROR

The State assigns, summarized, that the juvenile court erred when it refused to allow Daniel to testify.

STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches a conclusion independently of the juvenile court's findings. *In re Interest of Isabel P. et al.*, 293 Neb. 62, 875 N.W.2d 848 (2016).

ANALYSIS

The State does not assign as error or argue that the juvenile court should have accepted Daniel's plea at the hearing on January 5, 2017. Nor does the State assign or argue that, even without Daniel's testimony, there was sufficient evidence presented at the February 21 hearing to establish that Kelsey was a child within the meaning of § 43-247(3)(a) because she was homeless or destitute, or without proper support through no fault of Daniel. The State also does not challenge the juvenile court's handling of the offer of proof.

The State only challenges the court's "refus[al]" to allow Daniel to testify as a witness for the State. Brief for appellant at 13. The State argues that as a party to the case, Daniel had a right to testify and the State had a right to compel him to testify. It further argues Daniel made no objections to being called as a witness, and there was no other basis for the court to exclude his testimony. The State asks this court to vacate the order to dismiss, and remand the matter back to the juvenile court to hear the testimony of Daniel.

As detailed above, when the State attempted to call Daniel as a witness, the juvenile court said, "You cannot call him. He is the dad." We are unaware of any authority allowing the court to sua sponte prohibit the State from calling Daniel as a witness. As noted above, when called by the State as a witness, Daniel made no objection to testifying.

Daniel argues the juvenile court did not err in refusing to compel him to testify because the testimony the State would have sought from him "might have tended to prove him guilty of a crime," like child neglect. Brief for appellee at 11. However, we do not get to the merits of Daniel's argument because he never had the opportunity to invoke, or not invoke, his privilege against self-incrimination at the trial court level. See, U.S. Const. amend V; Neb. Const. art. I, § 12; Neb. Rev. Stat. § 25-1210 (Reissue 2016) ("When the matter sought to be elicited would tend to render the witness criminally liable or to expose him or her to public ignominy, the witness is not compelled to answer, except as provided in section 27-609."). In order for Daniel to invoke this privilege, he must first be asked a question which, if answered, would tend to render him criminally liable. See *In re Interest of M.S.*, 218 Neb. 889, 895, 360 N.W.2d 478, 482 (1984) ("We now conclude that, absent questions which would subject the parent to criminal sanctions, a proceeding to terminate parental rights does not trigger the protection afforded by the fifth amendment against self-incrimination. No incriminating questions were asked of the mother in this case."). See, also, *In re Interest of Clifford M. et al.*, 6 Neb. App. 754, 577 N.W.2d 547 (1998) (Fifth Amendment privilege not only permits person to refuse to testify against himself or herself during criminal trial in which he or she is defendant, but also privileges him or her to refuse to answer questions put to him or her in any other proceeding, civil or criminal, formal or informal, where answers might

tend to incriminate him or her in future criminal proceedings). Because the court sua sponte did not allow the State to call Daniel as a witness, he was never asked such a question and thus was not given the opportunity to invoke, or not invoke, the privilege of self-incrimination. See *State ex rel. Beck v. Lush*, 168 Neb. 367, 95 N.W.2d 695 (1959) (to avoid waiver of § 25-1210, objections based on statute must be made when witness is confronted with question or interrogatory seeking such information). The privilege of self-incrimination therefore could not have been a basis for the juvenile court's decision to not allow the State to call Daniel as a witness.

For the reasons stated above, we find no basis for the juvenile court's decision to prohibit the State from calling Daniel as a witness. We therefore reverse the order to dismiss, and remand the matter back to the juvenile court for further proceedings. Because Daniel neither objected to being called as a witness, nor had an opportunity to invoke, or not invoke, the privilege of self-incrimination, we need not address whether the State could compel Daniel to testify. *In re Interest of Carmelo G.*, 296 Neb. 805, 896 N.W.2d 902 (2017) (appellate court not obligated to engage in analysis not necessary to adjudicate case and controversy before it).

CONCLUSION

For the reasons stated above, we reverse the juvenile court's dismissal of the supplemental petition and remand the matter for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.